## State of Vermont v. Thomas D. Evans

[353 A.2d 363]

No. 172-75

Present: Barney, C.J., Daley, Larrow and Billings, JJ. and Shangraw, C.J., (Ret.), Specially Assigned

Opinion Filed February 4, 1976

*M. Jerome Diamond*, Attorney General and *Raymond L. Betts, Jr.*, Assistant Attorney General, Montpelier, for State.

*Hanford G. Davis,* Brandon, for Defendant.

Barney, C.J. This is a criminal complaint charging the police chief of the Town of Brandon with purposely, knowingly, and recklessly causing bodily injury to one Anthony L. Hall. The first trial resulted in a mistrial based on the inability of the jury to agree. On retrial, the verdict was guilty, and this appeal followed.

The defendant raises two issues. The first relates to the propriety of the trial court's orders requiring defendant to proceed to trial when, as he claims, he had not been furnished a list of prosecution witnesses. He further argues it was reversible error to allow a particular witness named Mitchell to testify who was claimed not to be on the list of prospective witnesses. The rule involved is V.R.Cr.P. 16. The second issue will be discussed further on in the opinion.

This rule provides in substance for the disclosure of all witnesses known to the prosecuting attorney and any statements made by them, and the names and addresses of all witnesses that the prosecuting attorney intends to call as witnesses at the trial, together with any record of prior criminal convictions of any such witnesses. This obligation, along with others listed in Rule 16(a) is triggered by a request from the defendant. Rule 16(b) relates to matters as to which the prosecutor is required to disclose without any request. We are only concerned in this case as to the matters in Rule 16(a) already noted.

The sequence of events with respect to this issue, as it appears from the record before this Court, is of some importance. The defendant, prior to the first trial, made a request for pertinent information under V.R.Cr.P. 16(a). This was responded to by the prosecutor within a week. All this took place about a month prior to trial in January. An omnibus hearing, as provided in V.R.Cr.P. 12(f), was also held prior to the first trial.

The prosecutor's list of witnesses known to have information about the case included the name of the witness Mitchell, at that time a selectman of the Town of Brandon. Mitchell was not on the list of witnesses that was intended to show which witnesses the prosecutor intended to call.

At the trial in January, the witnesses were sequestered. On the second day of trial, the prosecutor sought to call Mitchell. Mitchell had been present in the courtroom the full first day of the trial. When he was called, the trial judge ruled against the State and did not allow him to testify. There seems to be some question as to whether the ruling was made because the prosecutor had not listed him as a witness he intended to call, or because of the violation of the sequestration ruling, or because of both. In any event, at the first trial, only those witnesses listed by the prosecutor were allowed to testify. This ruling was certainly in keeping with the intent of V.R.Cr.P. 16.

With the mistrial, a new trial had to be set. The term of the State's Attorney was expiring, so the Office of the Attorney General then took over the matter. The matter was set down for trial before a different judge on May 28, 1975, about four months after the first one. On May 14, 1975, a new motion to produce under V.R.Cr.P. 16 was mailed to the Attorney General's Office in Montpelier. On the day of trial, May 28, the defendant moved orally, among other things, that either no witnesses be allowed to testify on behalf of the prosecution, or that the case be continued until a list of witnesses was furnished. There was a discussion about whether or not such information had been furnished by mail and telephone, but the defendant took the position that he had not had the information and that V.R.Cr.P. 16(a) had not been complied with.

A copy of the letter from the Attorney General's Office was then furnished the defendant. It contained the names of a number of witnesses that the prosecutor indicated he intended to call at this trial. It did not contain the name of the witness Mitchell.

The court, at that time, ruled that the State could call, as a matter of right, the four witnesses who testified for the State at the first trial. It reserved ruling on any other witnesses until a hearing could be had on each witness to give the defendant an opportunity to raise the issue of surprise. At that time the State indicated it also intended to call witness Mitchell. The court reiterated its ruling that the State was to be limited to the witnesses it disclosed to the defense at the prior trial, with an opportunity for the State to show cause why other witnesses ought to be allowed to testify.

The hearing was then terminated and the litigants went on to draw a jury. After the noon recess, another hearing was held with the jury absent, the question of certain witnesses being allowed to testify having now come up. A number of witnesses were brought up and the State undertook to sustain its burden of justifying the calling of those witnesses even though not on the list furnished the defendant for the original trial. The court denied the State the right to call any of these witnesses not listed for the original trial, even though listed for the second trial, except that the court did allow the State to call witness Mitchell.

The court's ruling essentially held that the defendant was sufficiently notified of the witnesses the State proposed to raise from the list provided for the first trial, and by the attempt to call witness Mitchell at that time. It in effect ruled that the second list furnished by the State was not for consideration on the issue, since witnesses on that list not on the original list were not allowed to testify. It expressly ruled that the defendant's request for the list of State witnesses for the second trial, in view of the time available between January and May, coming so close to the trial date, was not reasonably made. It went on to find no prejudice to the defendant had been demonstrated if Mitchell was allowed to testify, under the circumstances of this case.

This is the kind of judgment decision that is appropriate for a judge on the scene to make. Although this rule is intended to provide sanctions against a prosecutor who fails to abide its requirements, it ought not to reach to the exaltation of form over substance so as to become automatically error. As we have said in other connection, the misbehavior, if there be such, must be coupled with established prejudice to produce error. *State* v. *Jackson*, 127 Vt. 237, 238–39, 246 A.2d 829 (1968).

Here the trial court, apparently having in mind the fact that the matter was all set for trial with jury drawn and also that it was a retrial, found no prejudice. In view of the principle that V.R.Cr.P. 16(a) is for the protection of a defendant against unfair surprise, based on the facts in this issue, we cannot agree.

Admittedly, the State never informed the defense that Mitchell was to be a witness at any time. An examination of his testimony, and having in mind his official position in the community, it is an unavoidable conclusion that this witness's evidence was central to the prosecution's case. More than that, without it the case ended in a mistrial, with it a conviction followed.

The defendant was condemned for making his request for the list of State's witnesses only fourteen days before trial. There is no doubt but what a trial court may properly make a determination that a very late request is motivated improperly for purposes of delay, rather than a valid request for notice. However, on the original trial, a response to the request came back in eight days. The impact of the request on the trial progress came as a result of the State's failure to respond. It is unjust that the burden, in this case, fall upon the defendant. It is also hard to avoid a conclusion that the very trial tactics V.R.Cr.P. 16(a) is designed to thwart were being practiced here.

Admittedly, there will be bona fide occasions where a witness will come to the attention of the State just before, or even during, trial. If no bad faith is involved, in the interests of justice, the testimony ought to be received. But the rights of the defendant must also be honored. Depending on the circumstances, this may range from a recess for interview or deposition purposes, to a continuance. This is for the trial court to determine. Proper recognition of the defendant's rights was not given here and we must reverse.

The second issue was raised by oral motion on May 28 also. The defendant contended that the affidavit upon which probable cause was established and the arrest warrant issued contained a misstatement of fact and therefore the prosecution should be dismissed. The affidavit in question was given by the then State's Attorney in November, 1974. It states:

Now comes Robert I. Tepper, Rutland County State's Attorney upon oath deposes and says, on September 12, 1974 Anthony L. Hall gave sworn testimony at an inquest in which testimony he states that Thomas Evans, Police Chief at Brandon, caused him to hold paint cans in his out stretched arms while Evans struck Hall with a

night stick about the chest, ribs, and back. An investigation by Vermont State Police and a polygraph examination of Hall verifies Hall's allegations.

The challenged statement is the one stating the polygraph examination of Hall verifies the allegation. In point of fact the report of the polygraph operator was that the tests were inconclusive, and that the psychological makeup of this person was such that he could not be tested, and it was highly unlikely that a valid test could be obtained in the future. The statement relating to the sworn testimony at the inquest is unchallenged.

This attack on probable cause through a dispute as to a statement in the affidavit has a parallel in *State* v. *Kelly*, 131 Vt. 582, 589–90, 312 A.2d 906 (1973). In that case it was held that a failure to raise challenges to probable cause to prosecute until the time of trial waived the right to attack the complaint as spurious or insufficiently based. The adoption of the Vermont Rules of Criminal Procedure has intervened since that case first arose, but the principle behind it is preserved in those rules.

V.R.Cr.P. 12(b)(1) provides that "Defenses and objections based on defects in the institution of the prosecution" must be raised before trial by motion. Rule 12(f) provides the mechanism of an omnibus hearing to dispose of such issues, Rule 12(c) requires that motions be made before the omnibus hearing, and Rule 12(g) makes the failure to present the issues of 12(b) prior to trial a waiver of them.

In this case, the record puts this affidavit in the hands of the defendant on December 11, 1974, ahead of the omnibus hearing held December 23, 1974. No other request for hearing or relief was made, and, as has been noted, the issue was raised on May 28, 1975, the day of the second trial. This was clearly too late.

Lest it be felt there was substance to the defendant's claim, if timely raised, we merely note that the affidavit, on its face, was sufficient for probable cause purposes even without the challenged statement. Whether a different consequence would follow from a warrant invalid on its face, upon such attack, we do not now decide. The ruling of the lower court denying dismissal of the prosecution is fully supported by the policy

set out in *State* v. *Kelly, supra,* and reiterated in the Vermont Rules of Criminal Procedure.

*Judgment reversed and cause remanded.*