## State of Vermont v. Robert A. Howe

[386 A.2d 1125]

No. 97-77

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed March 15, 1978

*John A. Rocray,* Windham County State's Attorney, Brattleboro, for Plaintiff.

*Weber, Fisher, Perra & Gibson,* Brattleboro, for Defendant.

**Hill, J.** Following trial in the Windham Superior Court, appellant was convicted of first degree murder and sentenced

to life in prison. He complains of several alleged errors on the part of the trial court. We affirm.

In the early morning of April 1, 1975, an elderly woman was sexually assaulted and murdered in her room at the Latchis Hotel in Brattleboro, Vermont. Human bitemarks were found on the victim's neck and one of her breasts, and hairs not matching the victim's were found in her bed. The discovery of the body was reported to the hotel desk clerk by appellant, who occupied the room next to the victim's. In subsequent statements to the police, appellant said that he had been in bed, heard a scream, put on a pair of pants, gone into the hallway and seen a man hurrying down the hall toward a fire exit. Seeing the victim's door ajar, appellant's story continued, he entered her room, saw the body, checked both wrists for a pulse, and, finding none, ran downstairs and reported the crime to the hotel desk clerk.

The clerk called the police. He and appellant then went up to the victim's room, observed the body and left the room. The police arrived and, in the course of investigation, took several statements from appellant. At the request of one of the police officers, appellant went to the police station and gave additional statements. At 4:00 a.m. on April 1, appellant was given the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966).

Appellant remained at the Brattleboro police station during the daylight hours of April 1. While at the station house, appellant was served with warrants to search his hotel room, for the clothes he was wearing when he reported the murder and for samples of his cranial and pubic hair. These warrants were fully executed.

Appellant was taken out to lunch and to the State Police office in Rockingham, Vermont, for further questioning and was then returned to the Brattleboro station house. He left the station house at approximately 8:00 p.m. on April 1, accompanied by a police officer. Appellant and the officer spent the night at the home of appellant's wife. The next morning appellant and the officer returned to the station house, whereupon appellant decided to consult a lawyer. A public defender and another lawyer came to the station house, talked to appellant and then left with appellant. Until his

arrest two days later, on April 4, 1975, appellant was free of all restrictions. He was charged with first degree murder.

Appellant alleges the following errors by the court below:

I. Error in refusing to suppress certain statements which appellant made to police before he was given the *Miranda* warnings;

II. Error in refusing to suppress appellant's clothing and hair samples seized pursuant to search warrants allegedly issued without probable cause;

III. Error in refusing to suppress dental impressions, fingerprints and results of a blood test, all acquired pursuant to a court order allegedly issued without the requisite cause;

IV. Error in refusing to limit the scope of the State's cross-examination of an expert witness for appellant;

V. Error in denying appellant's motion for a separate trial on the issue of insanity;

VI. Error in admitting certain testimony and exhibits relating to the identification of bitemarks and the relation between the bitemarks on the victim's body and appellant's dentition;

VII. Error in permitting a certain witness for the State to testify;

VIII. Error in denying appellant's motions for a judgment of acquittal and for a new trial; and

IX. Error in the inclusion of an instruction relating to intoxication in the charge to the jury.

## I.

The *Miranda* warnings must be given when a suspect has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* v. *Arizona, supra,* 384 U.S. at 444; *Oregon* v. *Mathiason,* 429 U.S. 492, 494 (1977). Appellant argues that the trial court erred in refusing to suppress statements which appellant made to police at the Brattleboro Police station house prior to receiving the *Miranda* warnings. After a pretrial hearing, the court issued an order denying appellant's motion to suppress these statements. The court's order concluded that appellant

was "properly and timely advised of his rights," but the order did not include findings of fact, and we have not found any such findings in our review of the record. V.R.Cr.P. 12 (d) requires the court to state its essential findings on the record when "factual issues are involved in determining a motion." Ordinarily the trial court's failure to comply with this requirement would preclude our review of its determination and require reversal. However, for the reasons discussed below, this omission on the part of the trial court does not preclude us from resolving this issue.

First, our review of the transcript of the suppression hearing indicates that there was no evidence presented which would be sufficient to establish that appellant was "in custody" when he gave the statements challenged here. In the absence of such evidence the court could not properly have concluded that the police were required to give appellant the *Miranda* warnings.

Secondly, appellant has not alleged on appeal that he was "in custody" as that concept has been developed since *Miranda* v. *Arizona, supra,* 384 U.S. 436. Nor does appellant's reconstruction of the facts surrounding his interrogation at the police station tend to show that he was "in custody." On the contrary, appellant seems to base his claim that the warnings were not given soon enough on the allegation that he was a "suspect" at the time he gave the challenged statements. If the constitutionality of the police procedures in this case actually did depend on the truth or falsity of this allegation, we would probably be precluded from determining this issue without the requisite V.R.Cr.P. 12(d) findings. This is because the evidence presented at the suppression hearing could have supported either a finding that appellant was a suspect when questioned at the station house or a finding that he was not a suspect at that time. But whether or not appellant was a suspect does not matter if he was not in custody. As the United States Supreme Court said in *Oregon* v. *Mathiason, supra,* 429 U.S. at 495: "[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom

the police suspect." Since appellant neither alleged nor offered facts tending to show that he was in custody, we cannot see how the recorded findings of fact by the court at the suppression hearing could have included a finding that appellant was "in custody."

Finally, even if we assume that appellant should have been given his *Miranda* warnings earlier, and that the court below therefore erred in denying the motion to suppress appellant's statements, this would be harmless error. In *State* v. *Miner*, 128 Vt. 55, 71, 258 A.2d 815, 824–25 (1969), we said:

> A federal constitutional error can be held harmless only if the court is able to declare its belief, beyond reasonable doubt, that the shortage has not adversely affected the accused. And the conviction must be supported by overwhelming evidence of guilt. *Harrington* v. *California*, 395 U.S. 250, 23 L.Ed.2d 284, 288; *Chapman* v. *California*, 386 U.S. 18, 24.

This conviction is, we feel, supported by such "overwhelming evidence." Although there was no eye-witness testimony to the commission of the crime itself, and appellant's complained of statement was far from a confession, the contained admission of his presence at the scene was amply corroborated by other statements properly taken, and by conversation with the desk clerk, in no way connected with the police. Hair samples, bitemark patterns, appellant's glasses at the scene, and testimony of his prior statement that he might kill an elderly woman, although all circumstantial in nature, lead us to conclude beyond a reasonable doubt that the verdict of the jury would not have been different even if the statement had been suppressed.

We are therefore able to conclude that the claimed error regarding the admission of statements given before appellant received the *Miranda* warnings is not reversible error.

## II.

Appellant also alleges error on the part of the trial court for its refusal to suppress the clothing and hair samples obtained pursuant to search warrants. The gist of appellant's argument is that the affidavits filed in support of the request

for the warrants were insufficient to establish probable cause to search.

The affidavits challenged here were identical except that the affidavit supporting the request for the warrant for the hair samples alleged that hairs which were believed to belong to the perpetrator were found on the victim's bed. To establish probable cause an affidavit filed in support of a request for a search warrant must show circumstances from which a "man of reasonable caution" would conclude that a crime has been or is being committed and that evidence of that crime will be found in the place to be searched. *United States* v. *Neal*, 500 F.2d 305, 307 (10th Cir. 1974) ; see *Brinegar* v. *United States*, 338 U.S. 160, 175–76 (1949). That a crime had been committed was clearly established here by the affidavit filed in support of the warrant request.

The affidavit submitted in support of the request for the warrant for the hair samples sets forth facts which were purportedly within the personal knowledge of the affiant and his fellow officers and facts reported to the police by third parties. Such an affidavit, in order to enable the magistrate reviewing the request for the warrant to make an independent determination of the existence of probable cause, must set out underlying facts so that the magistrate can weigh the reasonableness of the conclusions drawn. Also, where the facts provided are derived from the hearsay statements of third parties not swearing to the affidavit, there must be something in the application sustaining the credibility of the third party source. *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964); *State* v. *Stewart*, 129 Vt. 175, 177, 274 A.2d 500, 502 (1971). Credibility of the third party source can be shown directly or inferred from the specificity of the report, corroboration of certain details by other reliable sources or other indicia of credibility. See *State* v. *Stewart*, *supra*, 129 Vt. at 178, 274 A.2d at 502.

The affidavit states that it appeared to the affiant and his fellow officers that the victim had been strangled and sexually assaulted. It described the position of the victim's body and her state of undress and noted that a pair of glasses, "which is believed to belong to" appellant, had been found on the

floor near the bed. The affidavit goes on to describe appellant as an acquaintance of the victim and states that appellant "supposedly discovered the victim's body." The affidavit recounts appellant's story of the scream and the man seen running down the hall.

The affidavit goes on to recite the statement of the hotel desk clerk, named in the affidavit, that only the victim and her son had a key to the room and that she always kept her door locked. The affidavit then states that appellant lived next door to the victim and that when he reported the discovery of the body to the desk clerk he was wearing only a pair of pants. Finally, the affidavit recounts the desk clerk's statements concerning the reporting of the crime: appellant came down the stairs yelling that the victim had been murdered; the clerk noticed that appellant was not wearing his glasses and asked appellant where they were, appellant replying that he didn't know, he had lost them; the two men went upstairs and entered the victim's room; appellant lifted the bed covers. The affidavit next recited the desk clerk's statement that he told appellant not to touch anything, pushed him out of the room and then left the room. Although nothing appears in the affidavit to sustain the credibility of the desk clerk, we adhere to the recent trend that does not require substantiation of an identified person. See *United States* v. *Harris*, 403 U.S. 573, 599 (1971) (Harlan, J., dissenting); *Jaben* v. *United States*, 381 U.S. 214, 224 (1965); *King* v. *State*, 16 Md. App. 546, 554–57, 298 A.2d 446, 450–52 (1973). See generally Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L. Rev. 741 (1974).

We think the facts set out in the affidavit would lead a reasonable man of caution to conclude that the hairs found in the victim's bed were from the body of appellant, and therefore that appellant's hairs would constitute evidence of the crime. The affidavit was sufficient, the warrant was valid and the evidence was properly admitted.

### III.

Appellant also complains of the admission of certain evidence acquired pursuant to court order under V.R.Cr.P.

41.1. The court order required appellant to appear at the Brattleboro police station for the taking of fingerprints, blood sample and dental impressions. The order, originally issued on April 2 (for dental impressions only), was quashed upon motion by a public defender then acting as appellant's attorney. Subsequently, without notice to appellant's known attorney, a new order was obtained ex parte and was served on appellant at 4:20 p.m. on April 3, directing appellant to appear at 5:30 p.m. on that date (prior to his arrest on April 4). This order was not served on appellant's attorney.

The validity of the V.R.Cr.P. 41.1 court order is attacked on the following grounds: (1) Although the State was aware appellant had an attorney, it pursued the revised order ex parte and served the order (when issued) upon appellant but not his attorney; (2) The affidavit filed in support of the request for the court order was insufficient to establish the requisite grounds for the temporary detention and search; (3) The order was not returned within 45 days as required by V.R.Cr.P. 41.1; (4) The police exceeded the scope of the order by taking photographs of appellant's body.

We are not persuaded by appellant's contention that failure to serve the order on his attorney infringed appellant's right to counsel under the Sixth Amendment of the United States Constitution and Chapter I, Article 10, of the Vermont Constitution. Although, as appellant notes, the right to counsel attaches at every "critical stage" of criminal proceedings, *United States* v. *Wade*, 388 U.S. 218, 224–25 (1967), the taking of nontestimonial evidence involved here was not such a "critical stage." As the Supreme Court said in *United States* v. *Wade, supra,* 388 U.S. at 227–28:

> [Preparatory steps in the Government's investigation such as analyzing of] fingerprints, blood sample, clothing, hair [are not] critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination . . . . The denial of a right to have his counsel present at such analyses

does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial.

If, as *Wade* holds, the preparatory steps of actually taking physical evidence are not "critical stages" of the proceedings, it would seem to follow that the procedures seeking authority for such taking, necessarily prior to the actual taking, are also not "critical." We so hold.

■ We also reject appellant's allegation that the affidavit supporting the request for the court order was insufficient to establish the requisite cause for the temporary detention and searches involved here. The affidavit is substantially similar to those filed in support of the requests for search warrants discussed in Part II of this opinion *supra*. The affidavit also states that bitemarks were found on the victim's left breast, that cigarettes found in the victim's room had been shown by laboratory tests to have been smoked by a person with blood type "O" and that fingerprints were found in the victim's room. Finally, the affidavit states that pubic hair found in the victim's bed shared with pubic hair samples taken from appellant (pursuant to search warrant) the characteristic that they had been trimmed. Applying the strict standards mandated by *Aguilar* v. *Texas,* 378 U.S. 108 (1964), discussed *supra,* we find that the affidavit showed probable cause to believe a crime had been committed, to believe that blood samples, fingerprints and dental impression taken from the perpetrator would constitute evidence of crime and, based particularly on the matching of the pubic hair, to believe that appellant was the perpetrator of the crime. There were sufficient facts presented in this affidavit, and the witnesses were identified state police officials.

■ The alleged failure of the State to make timely return of the court order is not grounds for suppression here because appellant has not demonstrated and our review of the record has not revealed any prejudice resulting from this departure from the required practice. See *State* v. *Stewart,* 129 Vt. 175, 180, 274 A.2d 500 (1971) ; *State* v. *Fairbanks,* 101 Vt. 30, 34, 139 A. 918, 919–20 (1928).

■ For essentially the same reason we find insignificant appellant's complaints that the police exceeded the scope of the court order by taking photographs of appellant's body. No prejudice appears because appellant has not shown that the photographs of his body were introduced into evidence.

## IV.

Appellant further assigns error to the trial court's ruling which allowed the State to cross-examine an expert witness for appellant "on any matters which are material and in issue in this case." This expert, a forensic odontologist, testified on direct examination that—contrary to the opinion of the prosecution's expert odontologist—it was not possible to determine that a particular person was the maker of a bitemark to the exclusion of all others. The State was allowed on cross-examination to ask the defense expert if he had observed the models of appellant's dentition and the photographs of the bitemarks and if so, whether the expert found the bitemark to be "consistent" with appellant's dentition.

■ The rule in Vermont is that cross-examination may touch upon that which limits, explains or refutes direct examination or modifies the inferences to be drawn therefrom. *State v. Berard,* 132 Vt. 138, 147, 315 A.2d 501, 508 (1974). The trial judge has broad discretion in determining what cross-examination may be allowed. *In re Campbell's Will,* 100 Vt. 395, 399, 138 A. 725, 727 (1927). The trial court properly exercised its discretion in allowing cross-examination as to the matters on which the State actually questioned the expert.

## V.

■ Appellant cites no cases, nor do we find any, which support his claim of error for failure to hold separate jury trials on the issues of insanity and guilt. As the United States Supreme Court said in *Spencer v. Texas,* 385 U.S. 554, 568 (1967): "Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law . . . ." We find no extraordinary circumstances in this case which make the refusal to hold separate trials an abuse of discretion.

## VI.

▉ Appellant complains that a trial exhibit, a transparency of the victim's body made from film shot by the state pathologist, was improperly admitted because there existed gaps in the chain of custody of the film. The test of admissibility is that the photographs or slides are a fair and accurate representation of their subject. *Killary* v. *Burlington-Lake Champlain Chamber of Commerce, Inc.,* 123 Vt. 256, 268, 186 A.2d 170, 178 (1962). Gaps in the chain of custody are not relevant. The state pathologist testified at trial that this transparency was an accurate representation of its subject. There was no countervailing testimony. Therefore, there was no error in the admission of this exhibit.

▉ Appellant also argues that the testimony of the State's expert odontologist regarding the comparison of the model of appellant's dentition with the photographs of the bitemarks on the victim should have been suppressed. Appellant's claim of error on this point focuses on the failure of the State to establish that the metric scale used in the enlargement to life-size of the photograph of the lacerated breast matched exactly the actual metric scale which appeared in the photograph itself.[1] We do not find this omission to affect the admissibility of the prosecution expert's testimony, however, because our reading of the transcript indicates that the expert's bitemark identification analysis depended on comparisons of characteristics easily observable by the human eye, rather than minute measurements and equation of distances. The bitemark identification process can be carried out, though perhaps less convincingly, no matter what the relation in scale of the dentition model to the bitemark photographs. We hold the testimony challenged here was rightfully admitted.

## VII.

▉ Appellant further complains that he was prejudiced by the admission of testimony of a State witness who was not

---

[1] The breast was photographed with a scale alongside it, and the enlargement to purported life-size was accomplished by blowing up the photograph until the scale in the picture matched a scale used by the printer.

disclosed to the defense prior to trial and who possibly had vague acquaintance with two jurors. This witness was first made known to the prosecution on Monday, December 5, 1976. The prosecution immediately notified the defense of his existence, and the witness was deposed by the defense on the night of December 5. The State proposed to call the witness on December 8, and, upon objection by the defendant, the court postponed his testimony until the State had called all its other witnesses. The witness subsequently testified on Friday, December 9.

■ We do not think the appellant's rights were unduly prejudiced by the court's decision to let the challenged witness testify on December 9. As we said in *State* v. *Evans*, 134 Vt. 189, 193, 353 A.2d 363, 366 (1976):

> [T]here will be bona fide occasions where a witness will come to the attention of the State just before, or even during, trial. If no bad faith is involved, in the interests of justice, the testimony ought to be received. But the rights of the defendant must also be honored. Depending on the circumstances, this may range from a recess for interview or deposition purposes, to a continuance. This is for the trial court to determine.

Here the appellant had three full business days after deposing the witness in which to prepare for his cross-examination. If more time was needed, those three days were sufficient to enable the appellant to develop good reasons for a requested continuance and to present those reasons to the court. Our review of the record reveals no conclusive showing that more time would have affected the appellant's cross-examination of this witness in any way.

■ As far as the relationship between the challenged witness and two of the jurors is concerned, appellant seems not to have seriously pursued that branch of his objection in the court below,[2] and we decline to do so here. The trial judge was therefore within his discretion in allowing the newly-discovered witness to testify.

---

[2] There was no motion to strike jurors, for a change of venue or for a mistrial at the time this witness was challenged.

## VIII.

The appellant complains that the evidence was not sufficient to establish beyond a reasonable doubt that he was sane at the time of the commission of the offense. In Vermont a criminal defendant may be found not guilty by reason of insanity if at the time of committing a criminal act "as a result of mental disease or defect he lacks adequate capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 13 V.S.A. § 4801. Taking the evidence in the light most favorable to the State, *State* v. *Fairbanks*, 123 Vt. 298, 298–99, 187 A.2d 335, 335–36 (1963), we find that there was sufficient evidence presented to the jury which, if believed, would establish appellant's sanity at the time of the offense beyond a reasonable doubt.

## IX.

 Finally, appellant complains that the trial court erred by including in its charge to the jury an instruction on intoxication. There was testimony that appellant had been drinking on the night of the murder, but the same testimony tended to establish that he was not intoxicated. There was no evidence presented that he was intoxicated. Under these circumstances, we think the instruction on intoxication was unnecessary, but we do not think its inclusion constituted reversible error. The trial court in the challenged instruction stated the law correctly, and, contrary to appellant's allegation, our reading of the charge indicates no reason why the intoxication instruction should have confused the jury in any way.

*For the foregoing reasons, the judgment of the Windham Superior Court is affirmed.*

**Billings, J.,** concurring. Although I concur in the result reached by the majority, I believe that defendant should have been given the *Miranda* warnings and that the statements given at the police station between 1:30 a.m. and 4:00 a.m. should have been suppressed. The defendant, upon direction of a senior officer at the scene of the crime, was taken to the police station by cruiser at 1:30 a.m., at which time the statements in issue were first taped and then written down in

longhand by the defendant. The defendant remained inside the police station at the request of the police until 4:00 a.m., when the *Miranda* warnings were given, with the exception of one brief moment when he was permitted to go outside onto the porch adjacent to the police station for a breath of air. Even if defendant was not "in custody" during the 1:30 a.m. to 4:00 a.m. period, it is my view that when he was detained at the station where the questioning occurred and the resulting statement came forth he was in a coercive environment and could have reasonably believed he was not free to leave. It is just this situation where *Miranda* warnings are necessary to combat the "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Oregon* v. *Mathiason,* 429 U.S. 492, 497–98 (1977) (Marshall, J., dissenting) (quoting *Miranda* v. *Arizona,* 384 U.S. 436, 467 (1966)). The privilege against self-incrimination is guaranteed by both the United States and the Vermont Constitutions, U.S. Const., amendments V, XIV; Vt. Const., ch. I, art. 10. I would hold that the Vermont Constitution requires *Miranda* warnings where, as here, coercive elements are compellingly present. I would affirm the conviction, however, on the ground that the constitutional error is harmless beyond a reasonable doubt because of the "overwhelming evidence of guilt" presented by the State. See *Harrington* v. *California,* 395 U.S. 250 (1969); *Chapman* v. *California,* 386 U.S. 18 (1967). The jury verdict would have been no different had the statements been suppressed.

Mr. Justice Larrow joins in the foregoing concurrence.