# State of Vermont v. Richard D. Mecier

[412 A.2d 291]

No. 88-79

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Bristow,
District Judge, Specially Assigned

Opinion Filed February 5, 1980

*M. Jerome Diamond,* Attorney General, and *Susan R. Harritt,* Assistant Attorney General, Montpelier, and *P. Scott McGee,* Lamoille County State's Attorney, Hyde Park, for Plaintiff.

*James L. Morse,* Defender General, *William A. Nelson,* Appellate Defender, and *Jacqueline Coates* and *Carol Smith,* Law Clerks (On the Brief), Montpelier, and *Barry E. Griffith,* Rutland County Public Defender, Rutland, for Defendant.

**Billings, J.** This case arises as a result of the defendant-appellant's convictions on July 21, 1978, on two counts of aggravated assault for the shooting of his estranged wife and daughter on October 10, 1977, in Rutland, Vermont. The defendant did not contest the shootings, but raised the defense of insanity. He appeals claiming error, both in the pretrial proceedings and during trial.

The defendant claims error in the admission of certain tape recorded statements amounting to admissions made during the period of time after the shootings when the defendant left the scene of the crime and barricaded himself in his house. He alleges that the tapes were not properly authenticated and that there was a failure to account for their continuous custody.

During the three hours that the defendant was barricaded in his house, a deputy sheriff and several other persons spoke by telephone with the defendant urging him to surrender. These conversations were taped by the deputy sheriff. The deputy sheriff testified that he had custody of the tapes "most of the time," but that on two occasions he had left them at the state's attorney's office. The deputy did identify the tapes, however, as those he had made. In addition, he testified that he was familiar with and recognized the defendant's voice and that the tapes were continuous or unspliced despite several accountable gaps therein. There was no countervailing evidence that the tapes were inaccurate or that they had been tampered with.

■■ As this Court has stated:

> The test for a foundation for admissibility is not absolute certainty. It only requires that the evidence be of demonstrable relevance and of sufficient meaningful substance to be justifiably relied upon as a fact by the jury, rather than an insubstantial invitation to conjecture.

*State* v. *Burack*, 133 Vt. 482, 484, 346 A.2d 192, 194 (1975). See also *State* v. *Ross*, 130 Vt. 235, 240, 290 A.2d 38, 41 (1972). While there may be technical shortages in the proof of the chain of custody, this alone may not require exclusion of the evidence. *State* v. *Robair*, 133 Vt. 262, 264, 336 A.2d 183, 185 (1975).

■ ■ Where the identity of the evidence is established, the evidence is generally admissible. *State* v. *Lacaillade*, 131 Vt. 161, 163, 303 A.2d 131 (1973). The identification and authentication of the tapes is an issue to be ruled upon by the trial court on the basis of relevance and reasonable certainty. See *State* v. *Ross, supra,* 130 Vt. at 240, 290 A.2d at 41.

■ The tapes admitted below appear to have been identified with reasonable certainty. The circumstances of their preparation and custody may give rise to some doubts about their ultimate credibility, but the defects in proof here are such that a jury could have found the tapes believable for the accuracy of their contents beyond a reasonable doubt. The tapes are not a substantial invitation to conjecture. These defects of proof may affect the weight accorded the tapes, but do not control their admissibility. *State* v. *Magoon*, 128 Vt. 363, 367, 264 A.2d 779, 781 (1970).

■ The defendant next claims error on the ground that the tape recorded statements were inadmissible under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), because they resulted from interrogation while the defendant was in custody and had not been warned of his right to remain silent. During the phone conversations, the defendant was barricaded in his own house with complete freedom of movement. He used his telephone to call persons other than the police and betrayed no signs that he felt his liberty restrained by the police.

The determination of whether the defendant was in custody focuses on the compulsive aspect of the interrogation. *United States* v. *Caiello*, 420 F.2d 471, 473 (2d Cir. 1969), *cert. denied*, 397 U.S. 1039 (1970); *State* v. *Hohman*, 136 Vt. 341, 349, 392 A.2d 935, 940 (1978). As this Court stated in *State* v. *Hohman, supra*, "[t]he key question is whether the defendant could reasonably have believed he was not free to leave." Although the police surrounded the house as they were attempting to persuade the defendant to surrender, it cannot be said that he was in custody, *State* v. *Lacaillade, supra*, 131 Vt. at 164, 303 A.2d at 133, or that he had a reasonable belief that he was not free to avoid compulsive interrogation, *State* v. *Hohman, supra*. The fact that the police investigation was focusing on the defendant is relevant only to the extent that it "contributed to the defendant's reasonable belief that he could not leave." *Id*. Under the facts of this case, it does not appear that the conduct of the police contributed to the defendant's belief that he was in an inherently compelling atmosphere. Rather, the defendant appears to have "spontaneously and voluntarily initiated" the statements to the police. *State* v. *Killary*, 133 Vt. 604, 606, 349 A.2d 216, 217

(1975). Inasmuch as there was no custody, there was no constitutional obligation to give the defendant the Miranda warnings. *State* v. *Howe*, 136 Vt. 53, 59–60, 386 A.2d 1125, 1129 (1978).

■ The defendant further claims that the statements were erroneously admitted into evidence without a full and fair hearing as to their voluntariness. Prior to trial, a full hearing was held on defendant's motion to suppress with respect to the admissibility of these statements. The court made specific findings that the statements were voluntary. *State* v. *Lapham*, 135 Vt. 393, 400, 377 A.2d 249, 253 (1977). At trial the defendant renewed his motion before a new trial judge. The trial judge indicated that he had listened to the tapes, and without another hearing denied defendant's motion on voluntariness. Where the court below has made specific findings of voluntariness and "[u]nless it can be said as a matter of law that this decision on a preliminary question was wrong, it must stand." *State* v. *Rocheleau*, 131 Vt. 563, 574, 313 A.2d 33, 41 (1973). There was no error below.

The defendant also contends that the second judge should have reconsidered the issue of voluntariness at trial. The instant appeal does not present an appropriate case for a determination of the scope of the law of the case doctrine as a limitation on the power of coordinate trial judges to review each other's rulings in the same case below. Were this Court to have found the ruling of the first judge below on voluntariness in error, the propriety of coordinate review below might have been before this Court. It is not and we decline to rule on the issue.

■ ■ The defendant contends that the State's cross-examination of the psychiatrist, called by the defendant to testify in support of the defense of insanity, elicited answers which violated the defendant's physician-patient privilege. 12 V.S.A. § 1612(a). Any admission made by defendant to his psychiatrist which tends to prove any element of the crime is privileged and cannot be introduced at a trial for that crime. *State* v. *Hohman, supra,* 136 Vt. at 345–46, 392 A.2d at 938; *State* v. *Lapham, supra,* 135 Vt. at 404, 377 A.2d at 255–56. The information elicited concerned a young girl whom the defendant thought was his illegitimate daughter, the fact that

the defendant took nude pictures of the girl, the relationship between the defendant, his wife and the young girl, the defendant's desire to have his wife return home, and the amount of the defendant's alcoholic consumption immediately prior to the shootings. While the defendant asserts this violated the mandate of *Hohman* and *Lapham* because the evidence introduced was relevant to his motive for committing the offense, those cases are distinguishable from the case at bar. There the evidence bore directly on the essential elements of premeditation and malice. In the case at bar, the evidence did not directly bear on such essential elements of the crime alleged. 13 V.S.A. § 1024(a). The cross-examination here reached only the factual basis for the psychiatrist's opinion, an opinion which was based on only two interviews with the defendant. In order to attack the credibility of the doctor's opinion, the State elicited the factual basis of it and attempted to prove its inaccuracy. This cross-examination was a proper method of impeaching a psychiatrist's testimony. There was no violation of the physician-patient privilege.

■ It is also contended by the defendant that the trial court abused its discretion in permitting the State to inquire on rebuttal into the relationship between the defendant and the young girl whom he believed to have been his illegitimate daughter, including the fact that the defendant took nude pictures of the girl. Defendant claims this evidence was more prejudicial than probative. *State* v. *Beyor*, 129 Vt. 472, 473–74, 282 A.2d 819, 820 (1971). This line of inquiry was originally opened by the defendant during the testimony of the defendant's psychiatrist on the defense of insanity. The psychiatrist stated that her diagnosis was based in part on the defendant's relationship to the young girl and his preoccupation with that relationship. It was proper rebuttal to contradict this evidence by showing that the young girl was not the defendant's illegitimate daughter and that the psychological relationship between them was not paternal. This evidence did not go to the elements of the offenses charged here but rather to the impeachment of the psychiatrist. See *State* v. *Reuschel*, 131 Vt. 554, 560, 312 A.2d 739, 742–43 (1973).

Defendant claims additional error in the admission of color slides of the victims' wounds and subsequent surgical proce-

dures and treatment, on the ground that the pictures were so gruesome as to improperly influence the jury to the prejudice of the defendant. The State offered this evidence to prove the essential element of bodily injury despite defendant's rejected offer to stipulate to the same. In addition the pictures tended to show the actual manner in which the shots were fired.

 The admissibility of photographic evidence requires the trial court to balance its relevancy against its possible prejudicial effect. *State* v. *Rebideau,* 132 Vt. 445, 450, 321 A.2d 58, 61 (1974). The decision on admissibility of such evidence is a discretionary one, and ordinarily the ruling of the trial court is not reviewable. *Killary* v. *Burlington-Lake Champlain Chamber of Commerce, Inc.,* 123 Vt. 256, 267, 186 A.2d 170, 177 (1962). Here the trial judge first viewed the slides outside the presence of the jury. In view of the State's burden to prove bodily injury, and the fact that no objection was made as to the accuracy of the pictures, the trial judge properly exercised his discretion in admitting the slides into evidence.

The defendant urges that it was error to admit on rebuttal a letter written by the defendant after his arrest requesting a prospective witness to lie about the circumstances surrounding the defendant's presence in the witness' home prior to the aggravated assaults, since the letter had not been disclosed to the defense prior to trial. V.R.Cr.P. 16(a)(2)(A). For the purposes of the State's direct case, this evidence was excluded. On the State's rebuttal, however, the evidence was received as impeachment of the defendant's psychiatrist. At that time, the defendant made no objection and raised this issue for the first time in a motion for new trial. In addition, the defendant alleges that the trial court erred in admitting the defendant's single utterance after his arrest, "I did wrong," in contravention of an agreement between the first state's attorney involved in the case and the judge who made the preliminary rulings. In spite of the fact that both the trial judge and the state's attorney at trial were not familiar with the agreement of which defendant's counsel was aware, defendant failed to object to the statement's introduction at trial.

 The burden is on the defendant to bring the alleged error to the attention of the trial court in order that the error,

if such, can be corrected without delay. Failure to do so waives the claimed error. Without an objection or a motion to strike, the claims made in the motion for new trial are waived for the purposes of appellate review. *State* v. *Kasper*, 137 Vt. 184, 190, 404 A.2d 85, 97 (1979). This Court will not entertain such errors not preserved below unless they are glaring errors. *State* v. *Morrill*, 127 Vt. 506, 511, 253 A.2d 142, 145 (1969). No glaring error is presented here.

Finally, the defendant alleges that the delay between arrest on October 10, 1978, and trial on July 18, 1979, denied him the right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, and this Court's Administrative Order No. 5 (12 V.S.A. App. VIII). The defendant was incarcerated during this entire period. He was already incarcerated, however, from October 12, 1978, on a charge of extortion, which case is still pending despite the State's notation of January 5, 1979, on the record that the charge would be dismissed. On February 2, 1979, the defendant noted on the record that the insanity defense would be raised, and as a result was confined at the Vermont State Hospital for examination until April 19, 1979. An omnibus hearing was held on May 10, 1979. The defendant first raised the speedy trial issue by oral motion on June 9, 1979, which motion was heard on June 13, 1979. However, at the time of filing this motion, the defense had filed four motions to suppress and motions in limine, some of which were late. The defendant, although acknowledging the filing of numerous pretrial motions, claims that the bulk of the delay resulted from inaction on the part of the court. *State* v. *Franklin*, 136 Vt. 568, 570–71, 396 A.2d 138, 139 (1978).

In *Barker* v. *Wingo*, 407 U.S. 514, 521 (1972), the United States Supreme Court states as follows:

> [T]he right to speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate.

Much of the delay here was caused by the defendant's late filing of pretrial motions. *State* v. *Dragon*, 130 Vt. 570, 574–75,

298 A.2d 856, 858–59 (1972). Administrative Order No. 5, sections 2 and 4 indicate that trial should be had within 90 days of arraignment, excluding the time taken up in determining the defendant's competency. See also Reporter's Notes, V.R.Cr.P. 48(b)(1). Although the defendant was not brought to trial for 280 days after incarceration, 90 days of that period defendant was incarcerated on another pending charge, and approximately 180 days was attributable to the defendant's late filings. Moreover, the defendant failed to raise the issue of speedy trial until 250 days had elapsed, after which the defendant's trial was held within 39 days.

On the record here, the delay was primarily caused by the defendant, not the court or State, as distinguished from the delay in *State* v. *Franklin, supra*. The defendant claims no prejudice from diminished memories or missing witnesses. *State* v. *Dragon, supra*, 130 Vt. at 574, 298 A.2d at 858; *State* v. *Mahoney*, 124 Vt. 488, 490, 207 A.2d 143, 145 (1965). Certainly, in view of the record here, there can be no claim of prejudice in disrupting family life or loss of employment. Defendant has not been denied his right to a speedy trial.

*Affirmed.*

**Hill, J.,** concurring in result. While I concur in the result and most of the reasoning of the majority opinion, I am unable to agree with their holding on the authentication of the tapes issue. Although I believe that the sheriff's deputy could have testified as to the statements he had heard the defendant make, I do not believe that the admission of the tape recordings as evidence of the substance of those statements was proper, since the State failed to establish a chain of custody from the time the tapes were made until they were introduced at trial. Indeed, the evidence clearly demonstrates that the tapes had left the custody of the deputy and the sheriff's office, and that there were gaps in the tapes admitted.

It is an elementary principle of evidence law that before real evidence will be admitted, a foundation establishing an unbroken chain of custody must be shown by the proponent in order to negate the possibility that subsequent tampering changed the evidence's condition. See *Izor* v. *Brigham*, 111 Vt. 438, 442, 17 A.2d 236, 237 (1941); C. McCormick, Handbook of the Law of Evidence § 212, at 527–28 (2d ed. 1972). Rigid

compliance with this rule has not been required, however, where there is adequate and reliable proof that the real evidence was not tampered with. See, e.g., *State* v. *Burack*, 133 Vt. 482, 484, 346 A.2d 192, 194 (1975) (full, tight crimp on collection tube sealing breath sample for testing in chromatograph sufficient to show no tampering). Accord, *State* v. *Ross*, 130 Vt. 235, 240, 290 A.2d 38, 41–42 (1978). But where the real evidence involved consists of tape recordings, courts have demanded "strict adherence to the rules for testing [their] admissibility." Annot., 58 A.L.R.2d 1024, 1032 (1958). The test of admissibility for tape recordings that is generally accepted in most jurisdictions was well-stated in *United States* v. *McKeever*, 169 F. Supp. 426 (S.D.N.Y. 1958). It was there held that the proponent of the recording must establish the following facts for admission:

(1) That the recording device was capable of taking the conversation now offered in evidence.

(2) That the operator of the device was competent to operate the device.

(3) That the recording is authentic and correct.

(4) That changes, additions or deletions have not been made in the recording.

(5) That the recording has been preserved in a manner that is shown to the court.

(6) That the speakers are identified.

(7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*Id.* at 430. See also Annot., *supra*, at 1032–36.

Moreover, this Court, speaking through then Justice, now Chief Justice, Barney, stated that the standards "referred to in the *McKeever* case would be valuable tests where the tape recording was being *offered for its substantive content.*" *State* v. *Davis*, 132 Vt. 290, 294, 318 A.2d 664, 666 (1974) (emphasis added). That is precisely the case here, and I am at a loss to comprehend how or why this admittedly valuable test suddenly became so worthless that the majority did not even address it. If it had, the conclusion that a proper foundation had not been laid would be inescapable.

Based on my interpretation of the relevant case law, the tape recordings should not have been admitted. I would, how-

ever, affirm on the ground that the error was harmless in light of the "overwhelming evidence of guilt." *State* v. *Howe,* 136 Vt. 53, 69, 386 A.2d 1125, 1134 (1978) (Billings and Larrow, JJ., concurring).

I am authorized to state that Judge Bristow joins in the foregoing concurrence.