### State of Vermont v. Michael John Connarn

[413 A.2d 812]

No. 12-79

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Gibson, Superior Judge, Specially Assigned

Opinion Filed April 8, 1980

*Gregory W. McNaughton,* Washington County State's Attorney, and *Philip H. White,* Deputy State's Attorney, Montpelier, for Plaintiff.

*James L. Morse,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant.

**Billings,** J. This is an appeal by the defendant-appellant from a conviction, after trial by jury, of selling for consideration the regulated drug, phencyclidine. 18 V.S.A. § 4224(g). The defendant alleges as error that (1) the delayed disclosure of a witness denied him the rights to pretrial discovery and a fair trial; (2) the State failed to introduce evidence to show the defendant guilty beyond a reasonable doubt; (3) the drug exhibit should have been excluded since a sufficient chain of custody was not shown; and (4) the Department of Health regulations designating phencyclidine as a regulated drug were substantively and procedurally defective.

On January 19, 1977, two police officers, acting as a surveillance team, two undercover police officers and a private citizen (a sometime informant for the police) went to a house in Riverton, Vermont, in order to purchase one-half ounce of the drug phencyclidine from a person known to the private citizen. Upon arrival, neither this person nor the drugs were there, but his girl friend indicated that she could contact the defendant, who was his vocational rehabilitation counselor. The police officers and the private citizen agreed with her to meet the defendant later the same day at a local restaurant. At that meeting one of the undercover agents and the defendant agreed to the purchase and sale of the drugs. Later the same evening, the four officers and the private citizen met the defendant in a parking lot of another restaurant. The defendant and the officer with whom he had made the arrangement entered the cab of a truck, where the defendant gave the officer one-half ounce of phencyclidine in return for one thousand dollars consideration. At that point, the surveillance team, together with the private citizen, closed in and the defendant was arrested.

Pursuant to V.R.Cr.P. 16(a)(1), the defendant timely moved, prior to trial, for disclosure of the names and addresses of all witnesses known to the prosecutor. The

private citizen's name was not disclosed prior to trial, nor was his name included in any of the police reports filed in the case. Although the prosecutor learned of his existence a few weeks prior to trial, no disclosure was made until the second day of trial. The duty to disclose is a continuing one, and it is clear that the State failed to comply with the rule. Absent anything to cure this error, this would be sufficient prejudice to require reversal. *State v. Cheney*, 135 Vt. 513, 516, 380 A.2d 93 (1977) (Billings, J., dissenting); *State v. Evans*, 134 Vt. 189, 192–93, 353 A.2d 363, 366 (1976). See also, *State v. Goshea*, 137 Vt. 69, 398 A.2d 289 (1979). This type of conduct on the part of the State is to be condemned, and we do not approve this "gamesmanship."

■ Despite the defendant's claim to the contrary, the private citizen's existence was not totally suppressed, but rather his disclosure was delayed. Here the record reveals that his existence became known to the defendant's attorney through testimony on the first day of trial, and it is clear that as far as this defendant is concerned, the private citizen was not acting in the capacity of an informant, but rather as a witness to part of the negotiations between the undercover police and the defendant. Following testimony indicating the citizen's existence, the State disclosed his identity, and the court then ordered the State to produce him. In addition, the trial court, then and on several other occasions, offered the defendant a continuance, which was refused each time. After the citizen was produced, the defendant was given an opportunity to depose him, and he did so. On the third day of trial the defense called him as a witness. The record shows that his testimony was largely cumulative. On an examination of the record, we believe the error was cured by the trial court's offer to continue, the opportunity for the defendant to depose the witness, and the opportunity for the defendant to examine the witness on the stand. *State v. Howe*, 136 Vt. 53, 67, 386 A.2d 1125, 1133 (1978); *State v. Cheney, supra.* The defendant has not shown any prejudicial error. *State v. Jackson*, 127 Vt. 237, 238–39, 246 A.2d 829 (1968).

■■ The defendant alleges that the State failed to introduce evidence reasonably tending to show the defendant's guilt

beyond a reasonable doubt, and he urges that in cases of drug sales between an undercover agent and an individual on a one-to-one basis, the court should require corroborating evidence. Here the evidence of sale included the direct testimony of the arresting officer. Although there was some conflicting evidence from the other officers concerning the location of the consideration paid for the drugs at the time of arrest, the evidence must be viewed in the light most favorable to the State excluding modifying evidence. V.R.Cr.P. 29, Reporter's Notes; *State* v. *Blakeney,* 137 Vt. 495, 500–01, 408 A.2d 636, 640 (1979); *State* v. *Prime,* 137 Vt. 340, 341–42, 403 A.2d 270, 271 (1979); *State* v. *Eaton,* 134 Vt. 205, 206, 356 A.2d 504, 505 (1976). Weighing the credibility of direct testimonial evidence from the undercover agent is the exclusive province of the jury. *State* v. *Blakeney, supra; State* v. *Bishop,* 128 Vt. 221, 228, 260 A.2d 393, 398 (1969). There was sufficient evidence introduced to show the defendant's guilt beyond a reasonable doubt, and there was no error in the trial court's denial of the motion to acquit.

■ The defendant claims the trial court erred in admitting into evidence as the State's exhibit a bag containing a quantity of the drug allegedly purchased here, because the State failed to establish a sufficient chain of custody. The only claim of a break in the chain of custody involves the conflicting testimony of the arresting officer and a member of the surveillance team concerning the time when the bag of drugs was sealed and whether a "field test" was conducted on it. The evidence did show that the bag of drugs, at all times here material, was in the personal possession or control of one of the testifying officers, except while it was being tested at the state laboratory.

■ The test for a foundation for admissibility is not absolute certainty. It only requires that the evidence be of demonstrable relevance and of sufficient meaningful substance to be justifiably relied upon as a fact by the jury, rather than an insubstantial invitation to conjecture. Imperfections that go only to its weight will not exclude it. *State* v. *Mecier,* 138 Vt. 149, 152, 412 A.2d 291, 293 (1980); *State* v. *Burack,* 133 Vt. 482, 484, 346 A.2d 192, 194 (1975). The identity of the specimen need not be proved beyond a possibility of doubt, but

the circumstances must be such as to establish a reasonable assurance of the identity of the specimen although all possibility of tampering is not excluded. *State* v. *Ross*, 130 Vt. 235, 240, 290 A.2d 38, 41 (1972). On the record there is no evidence to create a suspicion that the bag of drugs is other than that recovered at the scene of the crime, *id.*, and the record is barren of any suspicion that the evidence had been tampered with. The trial court was well within its discretion in admitting the evidence.

Lastly, the defendant alleges that the State failed to meet its burden of proof on the issue of whether phencyclidine has been designated a "regulated drug" pursuant to valid Vermont Department of Health regulations. The defendant's challenge is on procedural and substantive grounds.

18 V.S.A. § 4202 authorizes the State Board of Health to adopt regulations classifying drugs as "regulated drugs" within the definition of 18 V.S.A. § 4201(29), and "depressant or stimulant drugs" within the definition of 18 V.S.A. § 4201(6). The board is subject to the administrative procedure act, 3 V.S.A. ch. 25. 3 V.S.A. § 801(1). Its rules and regulations are entitled to the presumption of validity afforded by 3 V.S.A. § 803(d), which provides in part:

> Any rule adopted in compliance with this section shall be valid and binding on all persons affected thereby, shall have the force and effect of law until amended or revised or until otherwise determined by a court of competent jurisdiction in an action brought in accordance with the laws of this state, and shall be prima facie evidence of the proper interpretation of the matters therein referred to.

The defendant asserts that the certificate of the Board's compliance with this section was defective because it failed to elaborate the manner of adoption followed with respect to the drug classification regulations. Nothing is shown on the record before us, however, to indicate that the regulations here are other than procedurally valid, and there is no requirement that such details of the adoption procedure be set forth in the certificate of compliance.

18 V.S.A. § 4224(g), under which the defendant has been prosecuted, imposes a penalty for the sale of a "regulated

drug." Such a drug is one which is either "a narcotic drug, a depressant or stimulant drug, a hallucinogenic drug, or marijuana." 18 V.S.A. § 4201(29). 18 V.S.A. § 4201(6) provides three basic categories of "depressant and stimulant drugs," which are habit forming and have a serious potential for abuse arising out of their effects on the central nervous system. Phencyclidine is listed by the Board as one of those drugs that is habit forming or poses a serious potential for abuse. It is included in the definition of 18 V.S.A. § 4201(6)(C). To this extent the Board's regulations conform to the legislative enactment, and are substantively valid.

*Affirmed.*