**State of Vermont v. Christopher Seagroves**

[637 A.2d 1379]

No. 92-287

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 19, 1993

Motions for Reargument and Stay of Mandate
Denied January 28, 1994

*Howard VanBenthuysen,* Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

*Robert Paolini* of *Martin & Paolini,* Barre, for Defendant-Appellant.

**Morse, J.** Defendant was convicted on several charges, including grand larceny, 13 V.S.A. § 2501, for stealing a $30,000

car that he rolled onto its roof in a high-speed crash. On appeal, he claims the court should have granted his motion to dismiss the charges because the State had nol prossed them all at a jury drawing and then refiled them ten days later. Defendant also contends he is entitled to a new trial because the prosecution commented on his right to remain silent and because the grand larceny instruction to the jury was erroneous. We affirm.

After work on May 18, 1989, defendant stole a Cadillac from his employer, the Handy automobile dealership, and went for a high-speed drive. A deputy sheriff on patrol in Fairfax clocked defendant at 122 miles per hour on Route 104 and pursued him. Unable to keep pace with the speeding car, the deputy abandoned the chase. A few minutes later he received a radio message concerning an accident on Route 104. He eventually found the "steaming wreckage" of the Cadillac he had earlier pursued in a front yard off the road. No one could be found at the accident scene, but a short time later the deputy located defendant being treated for injuries at a nearby hospital. After the deputy issued defendant a speeding ticket, defendant asked him, "So, how fast was I going when you clocked me?" Later defendant told another investigating officer that he had been hitchhiking and was picked up by an unknown man driving the Cadillac. At trial, defendant did not testify, but called a friend, Darren Ransome, to testify that he had seen defendant hitchhiking on Route 104 on the evening in question. The court allowed Ransome's testimony even though he had not been disclosed as a witness until the day of the jury drawing and was not produced for the State's deposition until late afternoon the day before trial.

## I.

Approximately three years elapsed between the accident in May 1989 and the trial in early spring 1992. In the interim, on July 17, 1990, the State dismissed ("nol prossed") the charges at a jury drawing after the court denied its motion to continue. The State was not ready to proceed to trial at that time because it could not schedule some of its witnesses. Defendant did not object to the dismissal. The charges were refiled on July 27, 1990, and defendant, without objection, entered not guilty pleas at his arraignment that day. On December 6, 1991, we issued

*State v. Jones*, 157 Vt. 553, 601 A.2d 502 (1991), and, relying on that decision, defendant filed a motion to dismiss on February 25, 1992. The motion was denied.

The facts in *Jones* are almost identical to those in this case, except in *Jones* the defendant immediately objected to the State's request for dismissal of the charge "without prejudice" to a future prosecution. The *Jones* court agreed with defendant and dismissed the charge with prejudice as serving "'the ends of justice and the effective administration of the court's business.'" *Id.* at 555, 601 A.2d at 503 (quoting V.R.Cr.P. 48(b)(2)).

■ Here, defendant did not contest either the State's use of nol pros to obtain a delay or its reinstatement of the proceedings against him until our decision in *Jones* offered him a theory to avoid prosecution altogether. Yet, in *Jones* we stated:

[T]he sanction of dismissal with prejudice should be used only "sparingly," and ordinarily should follow a forewarning. The forewarning requirement has been applied in cases where the prosecution does not go forward and present its case after it has been denied a continuance. It ensures that the prosecution is able to choose between going to trial and taking the sanction of dismissal with prejudice.

157 Vt. at 559–60, 601 A.2d at 505 (citations omitted).

At the time the State nol prossed this case, the State, absent speedy-trial and double-jeopardy considerations, could continue a case with a nol pros. See Reporter's Notes to V.R.Cr.P. 48(a) ("state [has] an absolute right to nol pros prior to trial"); *State v. Forbes*, 147 Vt. 612, 616, 523 A.2d 1232, 1235 (1987) ("nolle prosequi . . . does not . . . prevent further prosecution"). *Jones* limited this practice by holding that, when the State goes too far and abuses its dismissal prerogative, it may have to forego prosecution altogether.

■ The record here does not reflect whether the State abused its nol pros power, but it does establish that the State was not forewarned that it must either meet the trial schedule or risk dismissal of the charges with prejudice. Furthermore, the most significant portion of the three-year delay between the accident and the jury trial resulted from multiple continuances granted to defendant, and, in one instance, from his own failure

to appear. In short, defendant's objection came too late, he has not shown overreaching by the State, and he himself was responsible for any inordinate delay.

## II.

The prosecutor, in his final argument to the jury, commented on the hitchhiker story defendant told the police:

> Now, ladies and gentlemen, isn't it your common experience that someone who is telling a story will tell it with a lot of detail? But what was the story Mr. Seagroves told? "Some fellow picked me up, the car smashed up, and then he pulled me out."
>
> Mr. Seagroves ever mention Darren Ransome? Does Mr. Seagroves even get that information through his attorney over these three years to [the police]?

One obvious inference of the State's argument to the jury was that defendant's statement to police that he was merely a hitchhiker should not be believed because, if he had been innocent, he would have been more detailed in relating the story. Defendant contends that the prosecutor's argument additionally insinuated that defendant did not take the stand because he must have been guilty.

■ We recognize that the State may not comment at trial that defendant exercised his Fifth Amendment right to remain silent. *State v. Mosher*, 143 Vt. 197, 204–07, 465 A.2d 261, 265–67 (1983). The Fifth Amendment claim, however, has no merit here. Defendant did not remain silent. Rather he gave the police an account of his involvement in the accident and defended it at trial by calling a friend as a witness to verify the hitchhiking story. Defendant's logic fails because the same argument could have been made to the jury whether he took the stand or not. Even if defendant had testified and given "credible" detail, the State still could have attacked defendant's truthfulness because the story he told police *before* trial was not credible.

■ Also, to the extent that the State's closing argument suggested that defendant had a duty to come forward with his witness before trial, it was not error. Defendant did have a duty

to disclose the witness under V.R.Cr.P. 16.1(c) (upon request, names and addresses of defense witnesses shall be disclosed to prosecution) but failed to do so. It was within the court's discretion to allow Ransome to testify, but an inference is nonetheless justified that revealing an undisclosed witness at trial was done to catch the State by surprise. See *State v. Meyers*, 153 Vt. 219, 224, 569 A.2d 1081, 1085 (1989) (trial court has discretion to exclude testimony for violation of V.R.Cr.P. 16.1(c)); *State v. Lombard*, 146 Vt. 411, 416, 505 A.2d 1182, 1185 (1985) (prosecution's failure to disclose witness under V.R.Cr.P. 16 "'must be coupled with established prejudice to produce error'") (quoting *State v. Evans*, 134 Vt. 189, 192, 353 A.2d 363, 365 (1976)). Had the State known about the witness before trial, it may have discovered inaccuracies in the witness's story. *Meyers*, 153 Vt. at 224, 569 A.2d at 1085 (purpose of disclosing witnesses, which is to assist State in trial preparation, undermined when disclosure occurs hours before trial).

■ Defendant's final claim is that the court improperly defined the intent element of larceny in a manner that allowed the jury to look at defendant's actions in wrecking the car to establish his intent to deprive Handy of it. This claim need not be addressed in detail because it simply misrepresents the court's charge. The court correctly stated defendant's intent was "measured at the same point of time as the taking" of the car and additionally that "the State must show that the defendant intended *at the time of the taking* to permanently separate the owner . . . from his property." (Emphasis added.) See *State v. Hanson*, 141 Vt. 228, 232, 446 A.2d 372, 374 (1982) (larceny requires "intent to steal at the very moment the property in question is taken into possession by the defendant"). The charge was not error.

*Affirmed.*