## State of Vermont v. Steven J. Murray

[353 A.2d 351]

No. 78-75

Present: **Barney, C.J., Smith, Daley, Larrow and Billings, JJ.**

Opinion Filed February 3, 1976

*Richard G. English,* Addison County State's Attorney, Middlebury, for State.

*Robert Edward West,* Defender General, and *Robert M. Paolini,* Deputy Defender General, Montpelier, for Defendant.

**Larrow, J.** The respondent appeals his conviction below for burglary, claiming it resulted from an unreasonable search and seizure. The issue raised is the "station house search" without warrant of an automobile in which respondent had been a passenger when it was stopped on the highway. A silver wedding bell taken in the burglary was found in the auto glove compartment, and admitted as an exhibit on trial.

Only because the parties are in substantial agreement with respect to all the relevant facts are we able to dispose of the issue presented. Beyond the docket notation that respondent's motion to suppress, heard at the omnibus hearing, was denied by the court the day before the matter went to trial, we have no record except the transcript. This was not in compliance with the provisions of V.R.Cr.P. 12(d), providing that where factual issues are involved in determining a motion the court shall state its essential findings on the record. The rule has a definite purpose. Although less rigorous than the requirement of V.R.Cr.P. 23(c) for findings of fact where a case is tried by court, it is intended to insure a record on appeal which delineates the factual basis on which the ruling of the court was made. The agreement of the parties here as to the facts precludes any claim of prejudice in the instant case, but we note that such agreement between the parties, particularly in a criminal case, is the exception rather than the rule. The statement of essential findings for the record is an important requirement which should not be overlooked or disregarded by the trial court.

Since each case of this nature turns on its particular facts, a summary of the events leading to seizure of the silver bell is required.

On January 14, 1975, the home of Russell Nason in Weybridge, Vermont, was burglarized, with the bell being one of a number of articles stolen. On the night of January 21, 1975, Trooper Michael LeClair was outside the State Police barracks when a green van went by, revving up its engine. He

decided to check it out, followed it about three quarters of a mile, and because of the manner of its operation, decided to stop it to check the driver for suspected driving while intoxicated. As he approached the vehicle, he shone his flashlight through the rear doors, and saw three pillowcases containing glassware and silverware. He believed these to be stolen, because of a reported burglary where pillowcases had been taken, and because of information from an unnamed informant that respondent and one Gibeault, the driver of the van, had been involved in some prior breakings. Although at one time Gibeault agreed to a search of the van, he quickly changed his mind before the actual search occurred, and the State here makes no claim that there was an effective consent to search.

At the scene, the rear door of the van was opened and it was observed, by flashlight, that the pillowcases were full of glassware and silverplate. They were not removed from the van. On questioning, Gibeault stated these items were "a bunch of garbage" given him by his father.

Appellant was frisked, and arrested for possession of a "hash pipe" and marijuana. Both he and Gibeault were detained and taken to the station, with Gibeault, interestingly enough, being permitted to drive the van although being detained for driving while intoxicated. At the station, Gibeault's father was called, and denied giving his son any property. A thorough search of the van was then conducted, and the silver bell in question was found in the glove compartment. It was identified, from a photo, as the one stolen from the Nason residence.

As with each one of the increasingly frequent search and seizure cases which are coming before us, it would be possible to write an extensive review of the judicial history of this clause of the Fourth Amendment. Such a review would not, however, resolve all of the uncertainties engendered by the successive opinions on the subject. Cf. dissent of Stewart, J., in *Cardwell* v. *Lewis*, 417 U.S. 583 (1974).

■ Without attempting to chart the future course of judicial decision, we are convinced that the search here without a warrant was justified. If it was a lawful search on the highway, the subsequent search at the station was also law-

ful. *Chambers* v. *Maroney*, 399 U.S. 42 (1970). Cf. also *United States* v. *Carneglia*, 468 F.2d 1084 (2d Cir. 1972). Although *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971) seems to hold the "automobile exception" inapplicable where there is no possibility of the automobile being removed and evidence taken away, so that there are no "exigent circumstances," the tendency of other decisions seems to be to confine *Coolidge* to its precise facts. While it was possible here to detain respondent, and Gibeault, on other charges, there was still the possibility that others in concert with them could have removed the vehicle or the evidence.

Moreover, recent cases seem to emphasize, as justifying warrantless search, not only the ambulatory character of automobiles, but the "lesser expectation of privacy in a motor vehicle."

> The constitutional difference between searches of and seizures from houses and similar structures and from vehicles stems both from the ambulatory character of the latter and from the fact that extensive, and often noncriminal contact with automobiles will bring local officials in "plain view" of evidence, fruits, or instrumentalities of a crime, or contraband.

*Cady* v. *Dombrowski*, 413 U.S. 433, 442 (1973). Accord, *Cardwell* v. *Lewis, supra.*

█ We are convinced that, under the cases cited, exigent circumstances existed here, bringing the case within the so-called "automobile exception". The remaining question is whether there was probable cause for search before the vehicle was taken to the station. We believe there was.

The pillowcases and their contents were first observed from the outside, by flashlight. The use of the flashlight is routine police procedure, and its use does not alter the case from one where the observation was made by daylight.

> [T]he fact that the officer used a flashlight to pierce the nighttime darkness does not transform his observation into a search. . . . The plain view rule does not go into hibernation at sunset.

*Marshall* v. *United States*, 422 F.2d 185, 189 (5th Cir. 1970).

The respondent here and Gibeault were under suspicion and investigation for previous robberies. The officer knew Murray to have a previous criminal record. He had information that stolen articles had been removed from rifled homes in pillowcases. He legally observed the pillowcases with glass and silver contents. He had a tip from an informant, which, while not sufficiently substantiated to constitute probable cause in itself, was an additional circumstance to be relied upon. Permission to search, at first granted, was later withdrawn. This totality of existing circumstances constituted probable cause for search. The test is "whether ordinary, reasonable men, possessed of the experience and knowledge of [Trooper LeClair] would conclude that the transaction . . . was more likely than not a criminal transaction." *United States* v. *Wabnik*, 444 F.2d 203, 205 (2d Cir.), *cert. denied*, 404 U.S. 851 (1971). This test was here met, especially after observation of the unusual personal property in the rear of the van.

Given probable cause and exigent circumstances, the warrantless searches on the highway and at the station were justified, and the exhibit in question was properly admitted into evidence against the respondent.

Although it is not binding upon us, we note that a similar conclusion was reached in an able opinion by Coffrin, J., in the U.S. District Court for the District of Vermont, as against both Gibeault and Murray, with respect to government property taken by them and seized along with the bell here in question. Cf. *United States* v. *Murray and Gibeault*, Cr. No. 75-20 (D.C. Vt. 1975).

*Judgment affirmed.*