# State of Vermont v. Gerald Driscoll

[400 A.2d 971]

Nos. 270-77 & 271-77

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed March 7, 1979

*Gregory W. McNaughton,* Washington County State's Attorney, Montpelier, and *Stephen W. Webster,* Orange County State's Attorney, Randolph, for Plaintiff.

*Valsangiacomo, Heilmann & Detora,* Barre, for Defendant.

**Hill, J.** By agreement, these cases were consolidated for trial before the District Court of Vermont, Unit No. 5, Orange Circuit, sitting without a jury. The court filed findings of fact and conclusions of law and entered an order adjudging the defendant guilty

of a misdemeanor in the Washington Circuit case and a felony in the Orange Circuit case. From these judgments, the defendant appeals. We affirm.

On April 14, 1976, the Barre Police Department received a complaint from a local automobile dealer that a black 1976 American Motors Pacer was missing from his back parking lot and that shattered glass was found on the ground in the vicinity of where the car's passenger-side door had been located.

Six days later, Officer West of the Barre Police Department received word of a break-in at Dessureau's Machine Shop. His investigation revealed that a large green milling machine had been stolen sometime between 4:00 p.m. on April 19 and 8:00 a.m. on April 20. Officer West observed and photographed tire tracks thought to be from the truck used to carry that heavy object away. Further investigation established that at approximately 11:30 p.m. on April 19, 1976, one of West's fellow officers made an investigation of a pickup truck stopped on a street in Barre. One of the occupants was working on the truck's rear window because a large green milling machine had slid forward and broken the glass. The truck was driven by its owner, Gerald Driscoll, the appellant in this case. He gave the investigating officer a fictitious address and said that he had purchased the milling machine from a man in Barre.

Officer West, a fellow officer, and a State Police corporal drove to the Driscoll residence in East Randolph, Vermont, and visited with the appellant's wife. West noticed tire tracks similar to those he had observed at Dessureau's Machine Shop and shattered safety glass in the Driscolls' driveway. Mrs. Driscoll refused to consent to a general search of the area, so Officer West and the others returned to the Barre Police Station, and he prepared an application for a search warrant.

The application was presented to a judge of the Washington District Court on the same day. Both the supporting affidavit and oral testimony of Officer West were received. On the basis of the machine shop break-in, the incident involving the appellant's pickup, and Officer West's observations at the Driscoll residence, a warrant was issued to search the Driscolls' property for the purpose of seizing a Bridgeport Milling Machine.

Armed with the warrant, Officer West, accompanied by two fellow officers and two Vermont State Police corporals, immediately returned to the Driscoll residence. Mr. Driscoll was absent.

In the course of the search, West and a fellow officer discovered a passenger-side door to a black 1976 Pacer. The vent window was shattered.

West told the other officers to continue the search, and he drove to the Bethel substation to obtain the stolen Pacer's identification numbers. By the time he returned, other items from the dismantled Pacer had been recovered. Those bearing identification numbers were verified as belonging to the stolen vehicle. These items were then seized.

The police also seized the dismantled body of a blue 1976 Chevrolet pickup truck. At the time of the seizure, they did not know whether the truck was stolen, but they did know that in February a Bradford Chevrolet dealer reported a similar truck stolen.

Following the seizure of these items, the appellant returned home. In the rear of his pickup was a large green milling machine. It was not the machine that had been stolen from Dessureau's. He was given *Miranda* warnings, and he signed a written acknowledgement of their receipt. He refused to waive his rights, but he asked Officer West if he could speak to him alone. During the ensuing conversation the appellant made some damaging admissions that were introduced at trial over his objection.

On April 21, 1976, the Washington County State's Attorney filed an information charging the appellant with receiving the Pacer "knowing the same to have been previously stolen" in violation of 13 V.S.A. § 2561.

On June 11, 1976, the Orange County State's Attorney filed an information charging the appellant with receiving the Chevrolet truck body "knowing the said truck body to have been feloniously stolen in violation of 13 V.S.A. § 2561."

On July 16, 1976, the defendant filed a pretrial motion to suppress the evidence seized in connection with the Washington Circuit information on the ground that the search warrant was issued without probable cause.

The motion was heard on September 9, 1976. The defendant raised several issues. All were rejected and the motion was denied.

Subsequently, the defendant filed a motion to suppress the evidence seized in connection with the Orange Circuit proceeding. No ruling ever was obtained with respect to this motion.

At the trial, the court allowed the defense and the prosecution to stipulate that the record on the Washington Circuit motion to suppress would be a part of the Orange Circuit proceeding as well. The defendant's attorney also indicated his continuing objection to the admission of evidence obtained during the search.

The appellant renews all of the claims he advanced before the Washington District Court at the hearing on his motion to suppress, and he challenges several rulings made by the Orange District Court at his trial. We affirm both courts in every particular.

## I.

The defendant first challenged the integrity of the affidavit submitted in support of the application for the search warrant, which stated in part:

> While at [the Driscoll] residence I observed tire tracks leading to the buildings in the rear and these tracks appeared the same as the ones that I had observed at scene of the break. I also observed safety glass on the ground which I believe to have come from the broken window of the truck. There was [sic] other vehicles in the yard and none of them appeared to have a broken window. I asked permission to look in the buildings and Mrs. Driscoll refused to give me permission.

At the hearing, Officer West testified that Mrs. Driscoll said he could visit the garage, so he went to the door and looked in. It was on the approach to the garage that West observed the tire tracks and safety glass referred to in the affidavit.

Mrs. Driscoll testified that she never gave the police permission to approach the garage. Citing her testimony and the affidavit, the defendant's attorney argued that because Officer West had no right to be in the vicinity of the tire tracks and safety glass, his observation of them violated the defendant's Fourth Amendment rights. Counsel therefore asserted that the reviewing court should disregard those facts in passing on whether there was probable cause for the issuance of the search warrant.

Where factual issues are involved in determining a pretrial motion, V.R.Cr.P. 12(d) requires the court to state its essential findings on the record, *State* v. *Howe*, 136 Vt. 53, 386 A.2d 1125

(1978), and the reviewing court complied with that requirement here. While acknowledging "some conflict in the evidence," the court found that Mrs. Driscoll did consent to the officers looking into the garage. The appellant now challenges this finding as not supported by the record.

■ This Court has not indicated the weight such findings are to be given on appeal. Cf. *State* v. *Murray*, 134 Vt. 115, 353 A.2d 351 (1976) (failure of trial court to make findings required by V.R.Cr.P. 12(d) did not preclude review where the parties were in substantial agreement with respect to all relevant facts). In our judgment, the clearly erroneous standard of V.R.C.P. 52(a) is appropriate and we now adopt it for that purpose. Cf. 2 C. Wright, Federal Practice and Procedure § 374, at 18 (1969) (federal courts agree, on matters other than guilt, that "clearly erroneous" standard should apply to findings by the court under Fed. R. Crim. P. 23(c)). The test will be given the same meaning in this context as it has in civil cases. *Id.*

■■ "The burden was upon the defendant to produce in this Court a record from which it affirmatively appears that error was committed in the court below." *State* v. *Beckenbach*, 136 Vt. 557, 561, 397 A.2d 79, 81 (1978). He now relies on ambiguous and allegedly conflicting testimony. If there was a conflict in this evidence, it was for the lower court to resolve. Viewing the evidence in the light most favorable to the State and excluding the effect of any modifying evidence, the challenged finding is not clearly erroneous. See *Green Mountain Marble Co.* v. *State Highway Board*, 130 Vt. 455, 296 A.2d 198 (1972). The reviewing court, therefore, did not err by refusing to strike from the affidavit all references to the tire tracks and the safety glass.

## II.

We next consider the appellant's contention that the supporting affidavit failed to establish probable cause for the issuance of the search warrant. At the hearing, he challenged the affidavit on three distinct grounds. First, his attorney pointed out that the time of the break-in at Dessureau's Machine Shop was not noted. He argued that time is of the essence in search warrant cases and that the omission in question negated a finding of probable cause because the issuing judge necessarily assumed that the break-in occurred on April 19, 1976. He contended that it is equally possible to assume that the crime occurred prior to April 19 and that

the requisite relationship between the break-in and the appellant's possession then would be absent.

The appellant's second objection was that it fails to mention the type, size, or physical description either of the stolen milling machine or the one seen in his truck. His attorney presented the reviewing court with expert testimony that no special significance could be attached to the word "milling machine" because there are a variety of them available. He therefore argued that the issuing judge's conclusion that the machine seen in the appellant's truck was the stolen item had no basis in fact.

The appellant's third and final objection again involved the tire tracks and safety glass. His attorney characterized that portion of the affidavit as conclusory and of no value to the judge that issued the warrant. Defense counsel maintained that the statements improperly were relied on in issuing the warrant because the affidavit did not set out the underlying facts so that the court could weigh the reasonableness of the conclusions drawn.

▮ The reviewing court rejected all of the defendant's arguments and held that "the supporting affidavit should be evaluated in a 'commonsense manner.'" Viewing it and the supporting testimony of Officer West from this perspective, the court held that the search warrant validly was issued. We agree.

The Supreme Court of the United States has cautioned:

[T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of [this] Court's cases are to be followed and the constitutional policy served, affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.

*United States* v. *Ventresca*, 380 U.S. 102, 108 (1965). So viewed, the affidavit itself established probable cause for the issuance of the search warrant.[1]

▮ We agree with the appellant that time is of the essence in this type of case. Probable cause exists when the facts and cir-

---

[1] For this reason, we do not reach the argument that because West's testimony before the judge who issued the warrant was not "made part of the affidavit" as required by V.R.Cr.P. 41(c), it was improper for the reviewing court to consider it in passing on the question of probable cause.

cumstances are such that a person of "reasonable caution" would conclude that a crime has been or is being committed and that evidence of crime will be found in the place to be searched. *State* v. *Howe, supra.* In other words, it must appear "that specified items are *presently* on the premises, and clearly that probability is lessened by the passage of time." *Pierson* v. *State*, 338 A.2d 571, 573 (Del. 1975). But the omission involved here did not render the affidavit fatally defective.

The affidavit presented to the issuing judge revealed that on the morning of April 20, 1976, the police received word of a local break-in. An investigation was conducted on that day, and tire tracks thought to be from the vehicle used in the break-in were observed and photographed. These facts give rise to the inference that the crime had been committed recently. Couple this with the fact that the appellant was seen late at night with a milling machine loosely set in his pickup, and the reasonable inference arises that he was in the process of transporting the stolen item.

On the day this crime was reported, tire tracks similar to those observed at Dessureau's and shattered safety glass were observed in the Driscolls' driveway. While these are conclusions drawn by Officer West, we do not believe the Fourth Amendment precluded the issuing judge from relying on them.

> Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner.

*United States* v. *Ventresca, supra,* 380 U.S. at 109.

Here, the affidavit recited many of the underlying circumstances on which the application for the search warrant was based, and every source of information was identified and credible. In these circumstances the judge passing on the application was entitled to rely on these statements. See *State* v. *Howe, supra.*

In light of these facts it was reasonable for the issuing judge to conclude that a crime had been committed and to infer

that evidence of it would be found in the place to be searched. That the inference ultimately proved to be erroneous did not alter its character as reasonable when drawn by the judge who issued the warrant. The Fourth Amendment does not protect the target of a search warrant from the erroneous inference, only the unreasonable one.

## III.

The defendant's final argument at the hearing on his motion to suppress was that because none of the items seized were listed in the search warrant, independent justification for their seizure would have to be established. His attorney objected to the prosecution's suggestion that the takings were justified under the plain view doctrine announced in *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971). That case holds that a warrantless seizure is valid provided the police have prior justification for an intrusion and in the course of that intrusion they inadvertently come across a piece of evidence incriminating the accused, provided it is immediately apparent to the police that they have evidence before them. *Id.* at 466. See C. Whitebread, *Constitutional Criminal Procedure* §§ 6.1–.12 (1978).

Defense counsel first argued that because the search warrant was issued absent a showing of probable cause, the intrusion on the defendant's property was not justified. Second, he argued and attempted to prove that the discovery of these items was not inadvertent because the police knew that they were located on the defendant's property before they obtained the search warrant. Finally, counsel asserted that the incriminating evidence was not immediately apparent as such because when the items were seized the police did not know that they were stolen.

The reviewing court rejected all of these arguments. It found:

> Pursuant to a valid search warrant the officers entered upon the premises of defendant and inadvertently discovered the automobile parts upon which the prosecution is based. The parts were in plain view and were recognizable as incriminating evidence in nature and were lawfully seized.

We affirm.

 What has been said with respect to the search warrant sufficiently disposes of the appellant's contention that this intru-

sion was unjustified, and he does not now urge advertency as a ground for suppressing the items seized. The only argument before us is that the police were not entitled to seize the Pacer and the Chevrolet truck body because when these items were seized they did not *know* that they were in fact stolen. In other words, defense counsel would have us read *Coolidge* as requiring that the evidence seized be immediately recognizable as incriminating in nature. We decline to adopt this construction.

In *Warden* v. *Hayden,* 387 U.S. 294 (1967), the Supreme Court held that "mere evidence" may be seized absent a search warrant provided there is probable cause "to believe that the evidence sought will aid in a particular apprehension or conviction." *Id.* at 307. We read *Coolidge* as requiring no more. The police need not actually know that the objects seized are incriminating; they need only have reasonable cause to believe that this is so. This is the construction given to *Coolidge* by the Sixth Circuit in *United States* v. *Truitt,* 521 F.2d 1174 (6th Cir. 1975).

> The inquiry . . . is not primarily whether the object is contraband, but whether its discovery under the circumstances would warrant a police officer of reasonable caution in believing that an offense has been or is being committed and that the object is evidence incriminating the accused.

*Id.* at 1177.

Under this standard the police were justified in seizing both the automobile and the truck body. In both cases, items were seized that matched descriptions of recently stolen property and these descriptions were known to the police. They were in a dismantled state, and the defendant, when confronted, made some damaging admissions tending to evidence a consciousness of guilt.

## IV.

The defendant alleges that the trial court erred when it allowed several of the defendant's statements into evidence over his *Miranda* based objection. Officer West testified at the trial that when the defendant arrived home he was given a proper *Miranda* warning and that he signed a written acknowledgement of its receipt. He refused to sign a waiver of rights form, but he asked West if he could speak to him alone. The defendant indicated that he could not talk about the operation because it

was too big and something serious would happen to him or to his family, perhaps a fatal accident. He also named an individual and told the police that if they checked that person's vehicles they would find something funny about them. The defendant was then placed under arrest.

Defense counsel objected to this line of questioning, but the trial court found that the defendant volunteered the statements. We agree.

■ First of all, this objection should have been raised pre-trial by a motion to suppress. See V.R.Cr.P. 12(b)(3). Second, there is a distinct difference between declining to waive a right on the one hand, and exercising that right on the other. Here, the defendant did not request an attorney, did not request that questioning (if what occurred amounted to questioning or interrogation) cease, and he freely chose not to remain silent after he was informed of his right to do so. In these circumstances we cannot say that the statements were obtained in violation of the defendant's *Miranda* rights. Cf. *State* v. *Hohman*, 136 Vt. 341, 392 A.2d 935 (1978) (once person in custody requests consultation with attorney, questioning must cease).

V.

The appellant contends that the trial court erred in denying his motion for judgment of acquittal on the Orange Circuit information. The motion was made at the conclusion of the State's case and alleged that the evidence was insufficient to establish that the defendant came into possession of the truck parts with knowledge that they were stolen.[2]

■ In passing on the denial of a motion for judgment of acquittal, this Court is required to review the facts in the light most favorable to the State. *State* v. *Girouard*, 135 Vt. 123, 135, 373 A.2d 836 (1977). The question then is whether that evidence fairly and reasonably tends to support the defendant's guilt beyond a reasonable doubt. *Id.*

The evidence established that the truck was stolen on or about February 24, 1976. Three individuals participated in the theft. That night, they dismantled the truck in a nearby garage. The

---

[2] The motion also included the Washington Circuit information, but that aspect of the trial court's ruling is not briefed. It therefore is waived. See *In re Wright*, 131 Vt. 473, 310 A.2d 1 (1973).

next day they delivered the truck bed, two fenders, and the tailgate to the appellant's residence. He was present and spoke to the men who delivered the parts.

The trial court concluded that where there is an unexplained possession of recently stolen property it is permissible to shift the burden to the defendant of going forward with the evidence to explain the possession. It held that because the defendant failed to do so, it was permissible to infer that he received the truck parts with knowledge that they were stolen. We agree.

In this respect, we adopt the view of the Supreme Court of Iowa.

> While a few jurisdictions hold otherwise, the rule which is generally followed and appears the better one to us is that unexplained possession by the accused of recently stolen property justifies an inference that he illegally received it.

*State* v. *Houston*, 211 N.W.2d 598, 600 (Iowa 1973).

## VI.

At the conclusion of the State's case, the defendant's attorney moved to dismiss the Washington Circuit information on the ground that by failing to allege the value of the Pacer automobile the State failed to give the defendant notice of whether he was being charged with a felony or a misdemeanor. The Washington County State's Attorney told the court that in his opinion there was no alternative but to treat the information as charging a misdemeanor. The trial court agreed, but the appellant contends that this did not cure the defect. We disagree.

13 V.S.A. § 2561 provides in part:

> A person who buys, receives, or aids in the concealment of stolen property, knowing the same to be stolen, shall be punished the same as for the stealing of such property.

The statute does not create or define the offense of receiving stolen property; it was enacted to punish the common law offense by its legal or common law designation without enumerating the acts that constitute it. *State* v. *Guppy*, 129 Vt. 591, 285 A.2d 717 (1971).

At common law, the property received must be of some value, although any value however slight is sufficient. 2 Wharton's Criminal Law and Procedure § 575 (R. Anderson ed. 1957). The value of the goods need not be alleged or proved, so long as some value may be inferred from the evidence. 76 C.J.S. *Receiving Stolen Goods* § 16. Under 13 V.S.A. § 2561, therefore, an allegation as to value is necessary only to establish that the crime should be punished as a felony rather than a misdemeanor. For this reason, we hold that the Washington Circuit information was sufficient to charge the defendant with the misdemeanor of receiving stolen property.

## VII.

The appellant also challenged his misdemeanor conviction on the ground that no evidence of the Pacer's value was introduced. The trial court found that "[e]ach article is of such nature that it has value." As noted in the preceding section, such an inference is permissible in this type of case, and we find no error in the quoted finding.

*Affirmed.*