# State of Vermont v. Timothy Dale Moran

[444 A.2d 879]

No. 355-79

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed February 2, 1982

Motion for Reargument Denied April 14, 1982

*David G. Miller,* Franklin County State's Attorney, and *Marianne Lipscombe,* Deputy State's Attorney (On the Brief), St. Albans, for Plaintiff.

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Jacqueline Majoros* and *Danforth Cardozo, III,* Law Clerks (On the Brief), Montpelier, for Defendant.

**Peck, J.** The defendant appeals from his conviction, after trial by jury, of assault and robbery with a dangerous weapon in violation of 13 V.S.A. § 608(b).

On November 25, 1978, at approximately 6 p.m., a clerk working in a small grocery store in St. Albans, Vermont, noticed a man in a tan corduroy jacket outside the store looking in at her. This man wore heavy boots and a knit hat folded up with a brim of different colors. He was "well built" and had blond hair and a moustache. Shortly thereafter, the store owner and his wife walked past the store and noticed a man nearby who attempted to cover his face from view. Their description of this person was substantially the same as that of the clerk.

Approximately forty-five minutes later a man entered the store with a ski mask pulled down over his face, pointed a handgun at the clerk and demanded money. The intruder was of the same height and build as the man seen outside the store earlier and wore the same type of boots and coat. The clerk also testified that the colors on the mask were the same as those on the knit hat worn by the individual seen outside the store. The robber took about $500.00 and some checks and fled.

The St. Albans' Police Department was notified and officers were dispatched to the store where they displayed books of photographs to the clerk, the store owner and his wife. Both the clerk and the owner's wife identified a picture of the defendant as the man they had seen standing outside the store. Immediately following these identifications the officers went to the defendant's apartment in St. Albans to question him about the robbery. Receiving no response when they knocked at the door, the officers summoned the owner of the building and asked him to open the defendant's apartment. This was done and two of the officers entered; they remained only long enough to determine that the defendant was not at home, then left. Two officers remained outside in a "stakeout."

Approximately two hours later, around 10 p.m., the defendant and his wife returned to the apartment. Two additional officers joined with the two outside the defendant's apartment. The officers then knocked at the door and when the defendant's wife answered, they entered and arrested the defendant. A search was made of the immediate area. Several .22 calibre

bullets and a jacket were discovered and seized. Neither the bullets nor the jacket were introduced into evidence at trial.[1]

Following the arrest of the defendant, and search incident to it, one of the arresting officers filed an affidavit application for a search warrant. The affidavit recited the identifications made of the defendant and the observations made by the officer at the time of the defendant's arrest. It essentially described the factual situation summarized above. The warrant was issued and on November 26, 1978, a search of the defendant's apartment was made.

The State's theory at trial was that the weapon used by the defendant in the robbery was a pellet gun. The officer who had conducted the warrant search testified that he had seen a pellet gun box during the search. The box was not appropriated by the officer or listed on the search warrant inventory.

The defendant objected to this testimony, claiming unfair surprise, and moved for a mistrial. Defense counsel represented to the court that the officer had not informed the defense investigator of his observation of the pellet gun box. The motion was denied but renewed at the close of the State's case. The defendant also filed a motion to suppress at the close of the State's case-in-chief claiming that the affidavit underlying the warrant for the final search of the defendant's apartment was an illegal product of the two earlier searches. The court denied these motions without comment.

On appeal, the defendant raises three claims of error. First, he claims the officer's testimony that he observed a pellet gun box inside the defendant's apartment should have been suppressed as the product of a prior illegal entry into the apartment. Second, the defendant argues that the trial court erred in denying his motion to exclude evidence of his prior criminal record without first weighing the probative value of that evidence against its probable improper prejudicial effect. Finally, the defendant claims that the trial court erred when it refused to excuse the panel of six talesmen on the grounds that they were not representative of a cross-section of the community.

---

[1] The defendant filed a pretrial motion to suppress the .22 calibre bullets on the grounds that they were irrelevant and were illegally seized. The State conceded the former point and agreed not to offer the bullets as evidence. As a result the constitutional question was not decided by the trial court.

## I.

Whether or not the first entry into defendant's apartment to look for him is properly designated a "search" as he contends, we will assume, arguendo, that it was, and that he is correct in his contention that three separate and distinct searches of the apartment were undertaken by law enforcement officers. Based on this assumption and the facts before us, the first search was unlawful, *Stoner* v. *California*, 376 U.S. 483, 489–90 (1964); *Chapman* v. *United States*, 365 U.S. 610, 615 (1961), but because no evidence resulted from it the defendant does not argue it as grounds for reversal. The second search occurred later that evening when the officers entered the defendant's apartment to arrest him and searched the immediate area. The third and final search of the defendant's apartment was carried out under the warrant on November 26, 1978.

Relying on *Payton* v. *New York*, 445 U.S. 573 (1980), defendant argues that the entry and arrest without warrant in this case was illegal, and evidence produced therefrom could not supply probable cause for the subsequently acquired search warrant. He claims that without the .22 calibre bullets seized at the time of the arrest, and the coat, there existed no probable cause to issue the search warrant. He concludes that the search warrant was invalid and therefore the testimony of the officers who searched his apartment pursuant thereto concerning the presence of the pellet gun box should have been suppressed at trial.

In *Payton* v. *New York*, the United States Supreme Court addressed the question of whether a warrant was required to arrest a person in his home. The Court held that the fourth amendment to the United States Constitution prohibits the police from making a warrantless entry into a suspect's home without his consent in order to make a routine felony arrest. 445 U.S. at 576. *Payton* was decided on April 15, 1980, whereas the arrest challenged on this appeal was made on November 25, 1978. While the *Payton* opinion does not discuss its retroactive effect, if any, the Supreme Court has held that under certain circumstances decisions involving the constitutional rights of the accused need not be applied retroactively. E.g., *United States* v. *Peltier*, 422 U.S. 531, 542 (1975); *John-*

*son* v. *New Jersey*, 384 U.S. 719, 726–27 (1966). Therefore, the parties contend that as a preliminary matter we must determine whether *Payton* is applicable to this case. We decline this invitation because we conclude that even with the exclusion of the information in the affidavit that was obtained from the entry for purposes of making the arrest, the affidavit contained sufficient facts upon which an impartial judicial officer could have found probable cause for issuance of a warrant to search the defendant's apartment.

█ █ A search warrant is not invalid merely because it is supported in part by an affidavit containing unlawfully obtained information. *United States* v. *Giordano*, 416 U.S. 505, 554–55 (1974) (separate opinion of Powell, J.); *Grimaldi* v. *United States*, 606 F.2d 332, 336 (1st Cir.), *cert. denied*, 444 U.S. 971 (1979); *United States* v. *Koonce*, 485 F.2d 374, 379 (8th Cir. 1973). Where the affidavit includes allegations based on illegally obtained evidence as well as independent and lawfully obtained information, a valid search warrant may issue if the lawfully obtained information, considered by itself, is sufficient to establish probable cause to issue the warrant. *Grimaldi* v. *United States*, *supra*; *James* v. *United States*, 418 F.2d 1150, 1151–52 (D.C. Cir. 1969); *State* v. *Peacher*, 280 S.E.2d 559, 580 (W. Va. 1981); *Commonwealth* v. *Thomas*, 444 Pa. 436, 447, 282 A.2d 693, 699–700 (1971). Thus, the issue presented is whether probable cause existed to issue the warrant after the arresting officer's observations are expunged from the supporting affidavit. This in turn requires us to examine the excised affidavit to determine whether it established probable cause to believe that fruits, instrumentalities or evidence of the robbery were concealed at the defendant's apartment.

█ Probable cause to search exists when the facts and circumstances set forth in the affidavit are such that a judicial officer may reasonably conclude that the evidence sought is connected to the crime and located at the place indicated. *State* v. *Driscoll*, 137 Vt. 89, 96–97, 400 A.2d 971, 976 (1979). Affidavits must, accordingly, be viewed in a common sense manner and not be subjected to a hypertechnical scrutiny. *Id.; United States* v. *Ventresca*, 380 U.S. 102, 108–09 (1965). Although preferable, it is not always essential that the affi-

davit include first-hand evidence that the items sought are on the premises to be searched. The nexus between the materials to be seized and the premises where the officers propose to search can be inferred from the nature of the crime, the type of materials sought, the extent of an opportunity for concealment, and reasonable inferences as to criminal behavior. *United States* v. *Charest*, 602 F.2d 1015, 1017 (1st Cir. 1979); *United States* v. *Pheaster*, 544 F.2d 353, 373 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099 (1977). "[E]vidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence." *United States* v. *Maestas*, 546 F.2d 1177, 1180 (5th Cir. 1977). See also *United States* v. *Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970).

■ Examining the excised affidavit in a practical and realistic manner, there is ample evidence from which a reasonable person might conclude that the defendant had committed the crime of robbery on the evening of November 25, 1978, and that evidence of the crime would be found in the apartment. The affidavit recited the identifications of the defendant made by the clerk and the wife of the store owner after they had studied over 300 photographs. It disclosed also that the police were familiar with the defendant and knew where he resided in St. Albans. The affidavit alleged further that several hours following the robbery the defendant entered his apartment carrying a brown paper bag and that the robber had fled the store after placing the stolen money in a similar bag. Moreover, it was some time before the officers entered the apartment, thereby giving the defendant adequate opportunity to conceal any incriminating evidence. Common sense suggests it is reasonable to conclude that the robber would conceal the distinctive hat-mask, weapon, and perhaps the fruits of his crime as well, at his residence. "[F]ew places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime." *United States* v. *Green*, 634 F.2d 222, 226 (5th Cir. 1981). Finally, the warrant was sought on November 26, 1978, the day after the robbery. The police recognized that time is of the essence in this type of case and proceeded without undue delay. *State* v. *Driscoll, supra*, 137 Vt. at 96, 400 A.2d at 976. We believe

the affidavit as excised established probable cause for issuance of the warrant to search the defendant's apartment and therefore hold the warrant was valid. The trial court did not err in denying the defendant's motion to suppress.

 Nonetheless, we are concerned with the State's failure to ensure that the defendant was fully informed of both items ｓeized and observations made in the course of the searches made by the police. Our Rules of Criminal Procedure are designed to avoid unfair surprise and gamesmanship in the trial of criminal cases. See V.R.Cr.P. 16 and 16.2. It is the duty of the prosecution to ensure that these goals are not thwarted by even negligent police conduct. See *State* v. *Connarn*, 138 Vt. 270, 413 A.2d 812 (1980). This failure did not result in error because the trial court properly conducted a hearing on the defendant's motion to suppress outside the presence of the jury and, as we hold above, correctly denied it.

## II.

The defendant next claims that the trial court committed reversible error when it denied his motion to exclude evidence of his prior criminal record without weighing the probative value of that evidence against its probable prejudicial effect. *State* v. *Gardner*, 139 Vt. 456, 458–60, 433 A.2d 249, 251 (1981). We need not determine the applicability of *Gardner* to this appeal, however, because the State in its closing argument used evidence of prior convictions in a manner suggesting criminal tendencies and motive on the part of the defendant. This is highly improper.

The defendant filed a motion in limine to prevent the State from using his prior convictions for impeachment. This motion was denied on May 14, 1979. The motion was renewed and again denied on June 6, 1979, the court excluding only a conviction which appeared to suffer from a procedural irregularity. Faced with the prospect of the State using these convictions to impeach him if he chose to testify, the defendant raised the issue on voir dire. He also brought out evidence of his prior convictions in his testimony on direct examination. The State inquired further about these convictions on cross-examination and, as we discuss below, improperly referred to them in its closing argument.

The probative value of evidence of prior convictions relates to the veracity of the witness, not to some predisposition on his part to commit a crime similar to the one with which he is charged. *State* v. *Roy*, 385 A.2d 795, 797 (Me. 1978); see *State* v. *Patnaude*, 140 Vt. 361, 371, 438 A.2d 402, 405 (1981). Nor is such evidence admissible to show a propensity on the part of a criminal defendant to engage in criminal activity. *State* v. *Ryan*, 135 Vt. 491, 494, 380 A.2d 525, 527 (1977); *State* v. *McMann*, 133 Vt. 288, 291, 336 A.2d 190, 192 (1975). Evidence of other crimes is not admissible to establish motive unless "the fact of the commission of the other crime provides a reason for the defendant to have committed the crime charged." *State* v. *Ryan, supra,* 135 Vt. at 498, 380 A.2d at 530. The prosecutor ignored these well-established rules when in closing argument he stated:

> He [the defendant] came to you and he said, "look, I'm, I've been convicted of petty larceny in October of 1978. Oh, I've had these convictions in the past. I was convicted of petty larceny in 1978, October of 1978. I was in the South Main grocery and I took property that didn't belong to me but believe me, I didn't do this. And a month later in November, another market [the market robbed in the instant case] was robbed but he says, believe me, I didn't do this.
>
> . . . .
>
> He says believe me, *I'm not the type of person who would do such a thing* and yet one year after he was released on parole and we hope there was rehabilitation, he walked in, did this thing at the South Main grocery, took property that wasn't his, one month later the assault and robbery was committed. (Emphasis supplied.)

The defendant objected unsuccessfully to this argument, arguing that it went beyond impeachment to suggest motive or propensity. We agree.

The State's closing argument unquestionably went beyond the permissible bounds for the use of evidence of prior convictions to impeach, and will not be tolerated by this Court. We reiterate, evidence of prior convictions is not admissible for the purpose of showing that a defendant in a criminal

trial is "the type of person who would do such a thing." The prejudice was not cured by the State's ambiguous statement that: "These convictions go only to his credibility. Can you believe him? Especially when they were in tough financial shape?" This statement is a paper-thin effort to disguise the language quoted above. Even if it is sufficient to create a doubt as to the appropriateness of the prosecutor's language, that doubt must be resolved in favor of the defendant. *State* v. *Ryan, supra,* 135 Vt. at 497, 380 A.2d at 529. Its actual effect, however, is to confirm our view that the prosecutor used the prior convictions not only to impeach but to suggest both motive and a propensity to commit crime. It was manifestly and egregiously improper, *State* v. *Shuttle,* 126 Vt. 379, 382, 230 A.2d 794, 797 (1967), and through the plain error rule we have elected to address the issue upon our own motion, notwithstanding the failure of the defendant to brief it, because of its possible adverse effect on the fair administration of justice and the rights of defendant. V.R.Cr.P. 52(b). See *State* v. *Trombley,* 136 Vt. 333, 335–36, 388 A.2d 433, 435 (1978).

■ We note also that the trial court's perfunctory cautionary instruction did not specifically address the prosecution's improper argument despite the defendant's strenuous objection to it. The limiting instruction cannot, therefore, be held to have eliminated the prejudice. Cf. *United States* v. *Coats,* 652 F.2d 1002, 1004 (D.C. Cir. 1981) (prejudice resulting from prosecutor's improper reference in summation to prior convictions not erased by cautionary instruction). The evidence of the defendant's guilt was not so overwhelming that we can say the judgment was not affected substantially by the error, therefore the judgment of conviction must be reversed.

Because we hold that the defendant must be granted a new trial for the reasons discussed above, we are not required to pass on the remaining issue presented.

*Reversed and remanded for a new trial.*