### State of Vermont v. Donald E. Martin

[496 A.2d 442]

No. 84-108

Present: Allen, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed April 30, 1985

*Richard G. English*, Addison County State's Attorney, Middlebury, for Plaintiff-Appellant.

*Langrock Sperry Parker & Wool*, Middlebury, for Defendant-Appellee.

**Underwood, J.** The State by an interlocutory appeal seeks to overturn the trial court's ruling that a temporary police roadblock (hereinafter referred to as a DUI roadblock), established for the purpose of screening motor vehicle operators for those who may be driving while under the influence of intoxicating liquor, in violation of 23 V.S.A. § 1201(a)(1), or (2),[1] constituted a violation of the defendant's Fourth Amendment rights. The manner in which the instant roadblock was conducted did not constitute a per se violation of the Fourth Amendment to the United States Constitution.[2] We therefore vacate the trial court's order granting the defendant's motion to suppress, and remand for a new hearing with direction to the trial court that it must consider the criteria hereinafter noted in this opinion when it rules on the constitutionality of this DUI roadblock.[3]

---

[1] Title 23 V.S.A. § 1201 (Supp. 1984) provides in part:

(a) A person shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway while:

(1) there is .10 per cent or more by weight of alcohol in his blood, as shown by analysis of his breath or blood; or

(2) under the influence of intoxicating liquor;

. . . .

[2] United States Constitution, Amendment IV, provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[3] The Vermont Constitution, Ch. I, Art. 11, provides:

That the people have a right to hold themselves, their houses, papers, and possessions, free from search or seizure; and therefore warrants, without oath or affirmation first made, affording sufficient foundation for them, and whereby by any officer or messenger may be commanded or required to search suspected places, or to seize

In order to understand the issues presented by this case, it is important to set forth clearly its procedural history. On November 12, 1983, after having been stopped at a DUI roadblock, the defendant was arrested for driving while under the influence of intoxicating liquor, a violation of 23 V.S.A. § 1201(a)(2). At his arraignment two days later, the defendant pleaded not guilty. Subsequently, the defendant filed a motion to suppress any statements made by him to, and any observations made of him by, the two arresting police officers at the time he was stopped at the roadblock. Following a hearing, the trial court granted the defendant's motion to suppress, finding that the State had failed in its burden of proof to show the necessity for the use of DUI roadblocks to combat the problem of drunk drivers.

Thereafter, the State sought reargument on the defendant's motion to suppress. The trial court granted that request and, on the basis of new evidence submitted at the second hearing, amended its findings to show that the State had proved the necessity for the use of DUI roadblocks. Notwithstanding, the trial court further found that the rules, regulations and guidelines under which the instant DUI roadblock was conducted provided inadequate standards and criteria for the operation of such roadblock, and, therefore, affirmed its earlier grant of the defendant's motion to suppress. Thereafter the trial court at the State's request made supplemental findings of fact concerning the operation of this DUI roadblock and, pursuant to 13 V.S.A. § 7403 (Supp. 1984) and V.R.A.P. 5(b)(1) (Supp.

---

any person or persons, his, her or their property, not particularly described, are contrary to that right, and ought not to be granted.

The defendant and the State each claim to have addressed the legality of the instant roadblock under both the United States Constitution (Amendments IV and XIV) and the Vermont Constitution (Chapter I, Article 11). However, neither the parties nor the trial court presented any justification for different standards to be applied under the applicable provisions of the United States and Vermont Constitutions. Because this important issue has neither been briefed nor argued in the present appeal, the decision in the instant case rests on the federal constitution. We reserve a decision on any difference in the tests to be applied under the federal and state constitutions until such time as the arguments on this issue are adequately briefed and argued before this Court.

1984), granted the State's motion for an interlocutory appeal of the suppression order.

## I.

The primary contention of the defendant is that the roadblock violated his rights under the Fourth Amendment to the United States Constitution, and that all evidence stemming from that roadblock should be excluded from his subsequent trial. The stopping of an automobile for questioning by police officers constitutes a seizure, thereby generating the protections of the Fourth Amendment. *Delaware* v. *Prouse,* 440 U.S. 648, 653 (1979). A number of state courts have held that the protection afforded by the Fourth Amendment is applicable to DUI roadblocks. *State* v. *Superior Court,* 143 Ariz. 45, 47, 691 P.2d 1073, 1075–76 (1984); *State* v. *Deskins,* 234 Kan. 529, 532, 673 P.2d 1174, 1178 (1983); *Little* v. *State,* 300 Md. 485, 493, 479 A.2d 903, 907 (1984); *People* v. *Scott,* 63 N.Y.2d 518, 524–25, 473 N.E.2d 1, 3, 483 N.Y.S.2d 649, 651 (1984). We agree with these courts and hold that DUI roadblocks constitute a seizure within the meaning of the Fourth Amendment. The inquiry therefore turns to whether the DUI roadblock conducted in the present case constituted an unreasonable seizure, and thereby violated any rights guaranteed to the defendant by the Fourth Amendment.

## A.

In examining seizures subject to scrutiny under the Fourth Amendment, the defendant argues that warrantless seizures without probable cause (as was the case with the instant DUI roadblock) are per se unreasonable, and therefore violate Fourth Amendment safeguards. The United States Supreme Court (hereinafter referred to as the Supreme Court), however, has stated that a warrantless seizure was not per se invalid in an instance where an automobile was stopped for a document check. *Prouse, supra,* 440 U.S. at 663. This Court agrees and, along with other state courts, now holds that a warrantless seizure at a DUI roadblock is not per se illegal. See, e.g., *Little, supra,* 300 Md. at 493–94, 479 A.2d at 907.

The defendant argues that there must be at least

a reasonable and articulable suspicion on the part of a law enforcement officer to stop an automobile at a DUI roadblock. The Supreme Court recently noted that "[i]n . . . contexts [other than school searches], however, we have held that although 'some quantum of individualized suspicion is usually a prerequisite to a constitutional search or seizure[,] . . . the Fourth Amendment imposes no irreducible requirement of such suspicion.'" *New Jersey* v. *T.L.O.*, — U.S. —, —, 105 S. Ct. 733, 744 n.8 (1985) (quoting *United States* v. *Martinez-Fuerte*, 428 U.S. 543, 560–61 (1976)). We agree that police officers conducting a DUI roadblock do not necessarily have to have a warrant, probable cause, or even a reasonable, articulable, individualized suspicion of illegal activity in order to stop a motorist on the public highway. See, e.g., *People* v. *Scott*, *supra*, 63 N.Y.2d at 524–25, 473 N.E.2d at 3, 483 N.Y.S.2d at 651. We hold that the constitutionality of a DUI roadblock under the Fourth Amendment will depend upon the reasonableness of the seizure, determined by weighing the public interest in the seizure against the degree of intrusion into personal privacy occasioned by the particular DUI roadblock. *State* v. *Hilleshiem*, 291 N.W.2d 314, 317 (Iowa 1980); *Deskins, supra*, 234 Kan. at 541, 673 P.2d at 1184; *People* v. *Scott, supra*, 63 N.Y.2d at 524–26, 473 N.E.2d at 3–4, 483 N.Y.S.2d at 651–52. Thus, each case must be decided upon its own facts.

B.

In considering the two factors which we have stated must be weighed in the balancing test for reviewing the constitutionality of temporary DUI roadblocks, we first address the one involving the governmental or public interest.

We take judicial notice of the serious threat posed to public safety by the frequency with which individuals, while under the influence of intoxicating liquor, continue to operate motor vehicles on the public highways. The Supreme Court has noted the severity of this problem:

> The situation underlying this case—that of the drunk driver—occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court, although not having the daily contact with the

problem that the state courts have, has repeatedly lamented the tragedy.

*South Dakota* v. *Neville*, 459 U.S. 553, 558 (1983); see also *Prouse, supra*, 440 U.S. at 659 n.18 (state interest in the apprehension of drunk drivers is subsumed in the general state interest in roadway safety). This problem has also been recognized by the other branches of the federal government. In 1982, Congress enacted a set of guidelines for states to follow in establishing alcohol traffic safety programs, in order to obtain federal grants. 23 U.S.C.A. § 408 (Supp. 1985). In 1982, President Reagan appointed a commission to investigate the national drunk driving problem. Exec. Order No. 12,358, 47 Fed. Reg. 16311 (1982).

Both the legislative and the executive branches of Vermont government have taken steps to investigate the problems posed by driving while under the influence of intoxicating liquor and have proposed new strategies to reduce the incidence of driving while under the influence of intoxicating liquor. The problem of drunk drivers has long been, and continues to be, a serious threat to public safety.

DUI roadblocks serve the public interest in different but related ways. On the one hand, DUI roadblocks are a *safety* measure, operating as one method of detecting motorists driving while under the influence of intoxicating liquor. The arrest of an individual immediately removes such driver from the public highway, eliminating at least one immediate (albeit temporary) threat to public safety. For those suspects who are subsequently convicted of driving while under the influence of intoxicating liquor, pursuant to the provisions of 23 V.S.A. § 1201 (1978 and Supp. 1984), the penalties imposed under 23 V.S.A. §§ 1206, 1208 (Supp. 1984) will suspend or revoke their right to legally operate a motor vehicle on a public highway.

On the other hand, DUI roadblocks act to further the public interest in reducing the number of motorists driving while under the influence of intoxicating liquor by acting as a *deterrent* to any person who might consider driving after drinking. Once the public is aware that DUI roadblocks are not per se illegal, and may be utilized by state and local law enforce-

ment authorities, drivers are more likely to think carefully about the possibility of being apprehended and prosecuted for driving while under the influence of intoxicating liquor.

▋ Referring again to the balancing test, the second factor to be weighed in determining the constitutionality of a DUI roadblock is the degree to which a stop at any given DUI roadblack intrudes upon an individual's legitimate and reasonable expectation of privacy. While the Supreme Court has stated that individuals have a reduced expectation of privacy when in an automobile on a public highway, *South Dakota* v. *Opperman,* 428 U.S. 364, 367–68 (1976), "[a]n individual operating . . . an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use are subject to government regulation." *Prouse, supra,* 440 U.S. at 662 (footnote omitted).

In considering the constitutionality of a DUI roadblock, courts have weighed the two factors cited above, public interest and private intrusion, in accordance with the particular facts of each case. While the nature of the public interest to be served by a DUI roadblock is unlikely to vary substantially from case to case, the degree of intrusion upon a motorist's privacy is directly related to the characteristics of the DUI roadblock in each case. In *Prouse, supra,* the Supreme Court noted that, although the spot check in that case was deemed unreasonable under the Fourth Amendment, a less-intrusive method of spot checks, or one not involving an unconstrained exercise of discretion, might be found to be reasonable under the Fourth Amendment. *Id.* at 663.

In reviewing a balancing test applied by our trial courts to determine the reasonableness of a DUI roadblock in a specific case, this Court will scrutinize the characteristics of that particular DUI roadblock. Other state appellate courts have set forth criteria which they consider essential in determining the reasonableness of a DUI roadblock. *Hilleshiem, supra,* 291 N.W.2d at 318; *Deskins, supra,* 234 Kan. at 541, 673 P.2d at 1185; *Little, supra,* 300 Md. at 499–502, 479 A.2d at 910–11.

We next turn our attention to those criteria which this Court will insist be considered by the trial court in determining the degree to which a specific DUI roadblock furthers the

public interest, and the degree to which it intrudes upon the motorist's privacy.

## II.

In addressing the constitutionality of a particular DUI roadblock, the trial court should review the roadblock's characteristics so that when it balances the degree to which the roadblock serves the public interest against the degree to which it intrudes upon an individual's privacy, it will be better able to analyze which criteria it must consider and how much weight it should give to each one in deciding whether a roadblock has sustained all Fourth Amendment challenges. As a general rule, a DUI roadblock will pass constitutional muster if: (1) the initial stop and the contact between the officers in the field and the motorist involves an explanation of the nature of the roadblock and minimal detention of a nonimpaired driver; (2) the discretion of the officers in the field, as to the method to be utilized in selecting vehicles to be stopped, is carefully circumscribed by clear objective guidelines established by a high level administrative official; (3) the guidelines are followed in the operation of the roadblock; (4) approaching drivers are given adequate warning that there is a roadblock ahead; (5) the likelihood of apprehension, fear or surprise is dispelled by a visible display of legitimate police authority at the roadblock; and (6) vehicles are stopped on a systematic, nonrandom basis that shows drivers they are not being singled out for arbitrary reasons.[4]

In setting forth the above criteria to be used in a balancing test to determine the reasonableness of the DUI road-

---

[4] Courts and commentators which have considered some or all of these criteria when determining the reasonableness of a roadblock are: *Hilleshiem, supra,* 291 N.W.2d at 318; *Deskins, supra,* 234 Kan. at 541, 673 P.2d at 1185; *State v. Cloukey,* 486 A.2d 143, 146 (Me. 1985); *Little, supra,* 300 Md. at 499–502, 479 A.2d at 910–11. See also Gontarz, *Delaware v. Prouse: Guidelines for Drunk Driver Roadblocks,* 12 J. of Police Sci. & Ad. 177, 184 (1984); Comment, *Curbing the Drunk Driver under the Fourth Amendment: The Constitutionality of Roadblock Seizures,* 71 Geo. L.J. 1457 (1983); Comment, *The Prouse Dicta: From Random Stops to Sobriety Checkpoints?,* 20 Idaho L. Rev. 127 (1984); Comment, *Sobriety Checkpoint Roadblocks: Constitutional in Light of Delaware v. Prouse?,* 28 St. Louis U.L.J. 813 (1984).

block under the Fourth Amendment, we do not intend, at this point, to establish any one or all of the above criteria as absolute requirements. Rather, a balancing test, by its very nature, involves the weighing of criteria, some of which may be applicable in one situation, but not in another. "Not all of the factors need to be favorable to the state but all which are applicable to a given roadblock should be considered." *Deskins, supra,* 234 Kan. at 541, 673 P.2d at 1185. When the trial court considers the six criteria in relation to the totality of the circumstances, it may find some of these criteria are not applicable or that additional or different criteria are equally as important.

### III.

■ Having set forth some of the criteria to be considered in determining the reasonableness of a DUI roadblock under the Fourth Amendment, we now turn to the facts of the instant case, and apply those facts to the balancing test set forth above. In reviewing the trial court's findings of fact, we must consider them in the light most favorable to the prevailing party. We are bound to accept the findings of the trial court unless we find them to be either clearly erroneous or totally unsupported by the evidence. *State* v. *Driscoll,* 137 Vt. 89, 95, 400 A.2d 971, 975 (1979) (applying the V.R.C.P. 52(a) standards to criminal cases).

In the early hours in the morning November 12, 1983, at a location on U.S. Route 7 in the town of Middlebury, the Vermont State Police established a roadblock. This roadblock was a part of the statewide R.A.I.D. (Reduce Alcohol Impaired Drivers) program under the auspices of the State Department of Public Safety. There had been no prior public notice given as to the location and timing of the roadblock.

The DUI roadblock involved two marked state police cruisers, with blue lights and emergency lights flashing, located at the site of the roadblock. One officer, wearing a light-reflecting vest and standing in the roadway between two fluorescent cones, directed all traffic into an adjacent parking lot. Once within that parking lot, each vehicle was directed to one of three additional police officers stationed between fluorescent cones.

When a vehicle stopped adjacent to one of the cones in the parking lot, the officer informed the driver that a R.A.I.D. roadblock was being conducted, and the purpose of the R.A.I.D. program was explained to the driver. The officer then checked the license of the driver, and the vehicle registration, and looked for observable defective equipment. The officer was also alert for any signs of alcohol impairment of the driver. If the officer noted any odor of alcohol, the officer administered an alco-sensor test to the driver, regardless of the presence or lack of any other evidence of alcohol impairment. If the results of the alco-sensor test exceeded .10%, the driver was then detained for further DUI field testing and processing, pursuant to 23 V.S.A. § 1202.

R.A.I.D. roadblocks were to be conducted in accordance with written guidelines issued on a statewide basis by the Department of Public Safety. The relevant portions of those guidelines, as determined by the trial court's findings, are as follows:

(1) Local supervisory personnel, troop station commanders, were required to determine the time and location of the roadblocks with the instructions to achieve "optimum exposure and results."

(2) Roadblocks could only be located at locations where they were clearly visible by approaching traffic.

(3) At the roadblock, one officer was to be placed in the road and required to wear a scotchlite fluorescent vest and to be clearly visible.

(4) The officer in the road was required to direct vehicles into a checking area that was off the travelled portion of the road.

(5) The officer in the road had no discretion as to which vehicles to stop.

(6) Officer and citizen safety was a primary concern of the guidelines.

(7) The off-the-highway checking officer was required to be pleasant and courteous and to explain that he was checking motor vehicle equipment, operator's license and registration.

(8) If at any time during the roadblock traffic got backed up so as to become a hazard to approaching vehi-

cles, all vehicles were to be allowed to pass the roadblock until the hazard was eliminated.

The trial court made specific findings, as requested by the State, concerning the written guidelines for the operation of a R.A.I.D. roadblock. The trial court found the written guidelines in the present case to be so inadequate, in view of the guidance provided by the Iowa Supreme Court in *Hilleshiem, supra,* 291 N.W.2d at 318, that it deemed the DUI roadblock to be unreasonable under the Fourth Amendment. We do not find the written guidelines in the present case to be so deficient as to be dispositive of the question of the constitutionality of the DUI roadblock under the Fourth Amendment. The written guidelines in the present case may fall short of perfection, but they do substantially address the criteria we enumerate above. First, they curb the field officers' discretion in the procedure to be followed. Second, they address the location and timing of the DUI roadblock, by requiring that the roadblock be clearly visible to approaching motorists. Third, they provide guidance to the officers for placing the safety of the participants as a prime objective and making the initial contact with a driver as nonintrusive as possible. Fourth, they provide substantial guidance for the systematic stopping of all vehicles; however, little or no mention was made of the need to keep the time of the stop to a minimum. While the standards set forth in *Hilleshiem* and *Little* provide an excellent goal, to which responsible officials should strive in formulating roadblock guidelines, we do not hold them to be an absolute minimum standard under the Fourth Amendment. Contrary to the arguments of the defendant, we decline to hold that the operating guidelines must be established by administrative, policy-making officers who are totally removed from field operations. Neither the possibility of supplemental oral instructions, nor the possibility of changes in operating guidelines in response to field conditions, will necessarily invalidate established guidelines that would otherwise be acceptable. The strengths and weaknesses of the guidelines used for the DUI roadblock in the present case must be weighed in conjunction with all of the other criteria set forth above.

We do not condone blanket, arbitrary exercises of power by governmental authorities which violate Fourth Amend-

ment rights and any roadblock lacking sufficient standards, guidelines and protections of the individual's right to privacy would run afoul of constitutional protections guaranteed by the Fourth Amendment....

*Deskins, supra,* 234 Kan. at 542–43, 673 P.2d at 1185.

Although the trial court did not consider this particular criterion, the defendant, both in his brief and at oral argument, contends that there must be general advance publicity of the time and location of a DUI roadblock in order for such a roadblock to meet the requirements of the Fourth Amendment. Despite the defendant's arguments to the contrary, we agree with the ruling of the Arizona Supreme Court when it expressed its view that:

[a]dvance notice of the exact location is not an absolute necessity for DWI roadblocks. Publishing the exact spot of the checkpoint would lessen the deterrent effect. Motorists, aware of where they would be stopped, would simply avoid those locations.

*State* v. *Superior Court, supra,* 143 Ariz. at 49, 691 P.2d at 1077 (citations omitted); see also *People* v. *Scott, supra,* 63 N.Y.2d at 527–28, 473 N.E.2d at 5, 483 N.Y.S.2d at 653 (in the case of a fixed checkpoint, "the known and permanent location of the checkpoint [makes] it easily avoidable.").

The court below, in its findings, failed to consider all of the six criteria which we have suggested the trial court analyze and include in its findings of fact before making its final determination as to the constitutionality of a DUI roadblock. Although V.R.C.P. 52(a) states that findings of fact shall not be set aside unless clearly erroneous, and we have held that this same standard applies to criminal cases, *State* v. *Driscoll, supra,* 137 Vt. at 95, 400 A.2d at 975, we have insisted that findings must state the facts essential to the disposition of the case. E.g., *Jacobs* v. *Jacobs,* 144 Vt. 124, 127, 473 A.2d 1165, 1167–68 (1984); *Argast* v. *State Environmental Board,* 143 Vt. 84, 86, 463 A.2d 214, 215 (1983); *American Trucking Associations, Inc.* v. *Conway,* 142 Vt. 17, 23, 451 A.2d 42, 45 (1982). The trial court's failure here to make the

essential findings mandates reversal. See *VanVelsor* v. *Dzewaltowski*, 136 Vt. 103, 106, 385 A.2d 1102, 1104 (1978).

## IV.

In reviewing a ruling by a trial court on the constitutionality of a DUI roadblock, this Court will determine first if the trial court has made findings of fact concerning each of the suggested criteria set forth in Part II of this opinion, second, if the trial court's findings of fact are supported by the evidence, and third, if the trial court has properly evaluated these criteria in applying the balancing test to determine the reasonableness of the subject DUI roadblock.

As previously noted, the trial court in its findings did not address each of the suggested criteria to determine the reasonableness of a DUI roadblock. The trial court's failure to find sufficient facts essential to a disposition of the constitutional issue raised makes it impossible for this Court to review, on the basis of the totality of the circumstances, the reasonableness of the DUI roadblock in the present case.

*The trial court's order granting the defendant's motion to suppress is vacated; cause remanded for rehearing and further consideration in accordance with the views expressed herein.*